[Decided January 29, 1887.]

NORTHERN PACIFIC RAILROAD COMPANY *v.* TERRITORY OF WASHINGTON EX REL. HIRAM DUSTIN, PROSECUTING ATTORNEY.

1. RAILROADS — STATIONS — COURTS. — In the absence of legislation providing other means for regulating and controlling railroads, a court of general jurisdiction may compel a railroad to extend to the public proper depot and other facilities for the transaction of business. Y. being a flourishing town, the county seat, and the largest and only important place in the county, a railroad stopped its trains there, but afterwards changed its policy, and ran all trains through without stopping, to a point four miles beyond, where there were only a few houses, and speculators were attempting to build up a town as a rival to Y. *Held*, that Y. might compel the railroad to stop its trains, establish a depot, and afford it other proper facilities for transacting business.

2. JURY — LAW AND FACT — RAILROADS. — The question as to what are proper railroad facilities, the facts being conceded or found, is a matter of law to be determined by the court, and not one of fact for the jury.

3. RAILROADS — COMPLETION — ESTOPPEL. — The sections of a railroad as completed were subject to government inspection, and rejection or acceptance. *Held*, that after a particular section had been accepted the railroad company was estopped from claiming that that section was still in process of construction, and at once became liable to operate and maintain the section, and responsible for its management.

4. ACTION — DEMAND — RAILROADS. — A demand would be necessary before instituting proceedings against a railroad to establish a mere *private* right to such depot and other facilities; but this case involving a *public* right to such facilities, no demand was necessary before suit.

5. SAME — PARTIES — STATE. — The public being interested, the proceeding was properly instituted in the name of the state upon the relation of the town.

6. RAILROADS — CHARTER — CONSTRUCTION — PUBLIC POLICY. — A construction of a railroad charter which would vest in the railroad absolute discretion, uncontrolled by the courts, to locate its stations where its interest or favoritism might suggest, without regard to the public interest, would be contrary to public policy, and should not be adopted if any other construction be possible.

ERROR to the District Court holding terms at North Yakima. Fourth District.

Proceeding by mandate to compel the railroad company to furnish and maintain for the use and convenience of the public a depot and other facilities for the transaction of business at Yakima City. All the material facts appear in the opinion of the court.

*Messrs. McNaught, Ferry, McNaught, & Mitchell, Mr. J. B. Allen, and Messrs. Whitson & Gilliam,* for the Plaintiff in Error.

The railroad at the time of the application was in the hands of the contractors of the Northern Pacific Railroad Company, and the construction department thereof, and as such it was purely private property, and the *quasi* public duties and responsibilities usually connected with the operation and management of a railroad, completed and in operation, had not attached to it. And that the acts to be performed, or left unperformed by the contractors or construction department, in relation to said railroad, are not duties resulting from an office, trust, or station. (*Shoemaker* v. *Kingsbury*, 12 Wall. 369; *Griggs* v. *Houston*, 104 U. S. 553.) A specific demand for the increased facilities is a condition precedent to the right to the issuance of the writ. (*Kemerer* v. *State ex rel. Garber*, 7 Neb. 130; *State* v. *Schaack*, 28 Minn. 358; *People* v. *Romero*, 18 Cal. 90; *Talcott* v. *Harbor Commissioners*, 53 Cal. 199; *Price* v. *Riverside Land and Irrigating Co.*, 56 Cal. 431; *State* v. *Governor*, 25 N. J. L. 331; *State* v. *Lehre*, 7 Rich. 234; *Condit* v. *Commissioners of Newton Co.*, 25 Ind. 422; Moses on Mandamus, 176; High on Extraordinary Legal Remedies, 36, sec. 41.) Said section 5 of the charter of plaintiff in error requires it to construct such stations only as are requisite in the economical conduct of its business, considering the interests of the public and the company. (*Camden & Amboy R. R.*

& *Trans. Co.* v. *Com. of Mansfield,* 23 N. J. L. 510; *State* v. *Mayor and Aldermen of Jersey City,* 36 N. J. L. 166; *Stuyvescent* v. *Mayor etc. of New York,* 7 Cow. 588.) *Mandamus* lies only to prevent a failure of justice, and where there is not a specific remedy in the ordinary course of law, and there should not only be a lack of specific remedy, but there must be a specific legal right. It must be a clear legal right, not a doubtful one. (*People* v. *Olds,* 58 Am. Dec. 398; *People* v. *Spruance,* 8 Col. 319; *Klokee* v. *Stanly,* 9 Am. & Eng. Corp. Cas. 465; *Atchison etc. R. R. Co.* v. *Denver etc. R. R. Co.,* 110 U. S. 681; *People* v. *Batchellor,* 53 N. Y. 128; High on Extraordinary Legal Remedies, secs. 550, 552; *People* v. *Hayt;* and *People* v. *Gerow,* 66 N. Y. 606; *Board of Police of Attala County* v. *Grant,* 47 Am. Dec. 102; *People* v. *Johnson,* 39 Am. Rep. 63; *Arberry* v. *Beavers,* 55 Am. Dec. 791; Wood's Field on Law of Corporations, 3d ed., 678; *Ex parte Trapnall,* 42 Am. Dec. 676.)

The charter of the plaintiff in error vests in the company the discretionary power of locating its stations at such places as will satisfy business demands, and compensate the company. Said discretion cannot be controlled by *mandamus.* (*Flagley* v. *Hubbard,* 22 Cal. 34; *United States* v. *Guthrie,* 17 How. 304; *United States* v. *Seaman,* 17 How. 225; 1 Rorer on Railroads, 140; High on Extraordinary Legal Remedies, secs. 42, 278; *Marquez* v. *Frisbie,* 101 U. S. 473; 1 Redfield on Railways, sec. 155, p. 645; *Atchison etc. R. R. Co.* v. *Denver etc. R. R. Co.,* 110 U. S. 681; *Arberry* v. *Beavers,* 55 Am. Dec. 791.) Plaintiff in error cannot be required to furnish facilities in advance of the business. Such are not necessary facilities. (*People* v. *Long Island R. R. Co.,* 31 Hun, 135; *Atchison etc. R. R. Co.* v. *Denver etc. R. R. Co.,* 110 U. S. 681; *Kemerer* v. *State,* 7 Neb. 133; *People* v. *Corporation of Brooklyn,* 19 Am. Dec. 502; *State* v. *School District No. 9,* 8 Neb. 92.) A portion of the ordinance of Yakima City in relation to furnishing station facilities therein is

void. *Mandamus* will not lie to enforce a void ordinance. (*State of Kansas* v. *Missouri Pac. R. R.*, 20 Am. & Eng. R. R. Cas. 45; Dillon on Municipal Corporations, sec. 353.) Yakima City, by its charter and ordinances, has attempted and is attempting to exercise control over the place of the establishment of a station within its corporate limits. The findings show that the public outside of said corporate limits is not interested in the question. The action is not prosecuted as the statute requires in the name of and on behalf of the real party in interest. (Code 1881, p. 35, sec. 4; *People* v. *Pacheco*, 29 Cal. 210.) The granting by the court of the thing asked for in the application of the defendant in error is an encroachment on the legislative power, and not the exercise of a judicial authority. (*Atchison etc. R. R. Co.* v. *Denver etc. R. R. Co.*, 110 U. S. 681; *Draper* v. *Notewore*, 7 Cal. 276.) The court in rendering judgment on the special findings is confined to verdict; cannot refer to other facts upon the record. Special findings determine character of judgment, and must not only sustain it, but be consistent with it. Verdict conclusive. (Proffatt on Jury Trial, secs. 436, 437, 439; *Hodges* v. *Easton*, 106 U. S. 408.) All the principal facts necessary to constitute a ground of application must be found by the jury; nothing must be left to presumption or inference, the court being incompetent to decide disputed facts or settle unsettled matters. (Proffatt on Jury Trials, sec. 438; *Board of Police of Attala County* v. *Grant*, 47 Am. Dec. 102; 29 N. W. Rep. 771.) The precise act required of the respondent in *mandamus* proceedings, as the duty to be performed, must be clearly and definitely specified in the judgment and writ. (High on Extraordinary Legal Remedies, secs. 561, 564, 539; *State* v. *City of Milwaukee*, 22 Wis. 398; Dillon on Municipal Corporations, sec. 698.) The thing demanded, and the act directed to be performed, must be made known so as to be definitely ascertained with certainty, not only as to

its own character and quality, but also as to the character, time, manner, and locality of its performance. (Moses on Mandamus, 170.) The judgment rendered, directing the issuance of a peremptory writ, ordered that the acts which were therein commanded to be performed should be performed immediately. The writ of *mandamus* will not issue to compel the performance of an impossible or unreasonable act, or to compel the performance of an act in an impossible or unreasonable manner. (Wood's Field on Corporations, sec. 458.)

*Mr. Reavis, Pruyn,* and *C. B. Graves,* for the Defendant in Error.

The proceeding is properly commenced on the relation of a public prosecutor, where the public is interested. (Moses on Mandamus, pp. 195–198; High on Extraordinary Legal Remedies, p. 302, sec. 430; *People* v. *Hawsley,* 37 N. Y. 347; *Doolittle* v. *Supervisors,* 18 N. Y. 153; Code, p. 374, secs. 691, 2171.) Where the duties are public, or the corporate duty of a plain and unequivocal nature, no previous demand need be shown to support the application for the writ. And a peremptory writ may issue in the first instance on application, in case of a clear violation of public duty. (High on Extraordinary Legal Remedies, p. 14, sec. 13; p. 203, sec. 284; p. 390, secs. 552, 553; *Board of Commissioners of Knox Co.* v. *Aspinwall,* 24 How. 376; Angell and Ames on Corporations, sec. 715.) Railroads are held to a strict performance of their duties to the public, and such duties are purely ministerial, and the courts are the sole arbiters of the necessities of the public, and railroad companies have no discretion. Stations, their character, and where they shall be placed, and their public necessity and convenience, are questions that are finally adjudged by the courts. (*State ex rel. Mattoon* v. *Republican Valley R. R. Co.,* 17 Neb. 647; 2 Potter on Corporations, p. 558, secs. 476, 477; 17 Neb. 684; Green's Brice's Ultra Vires, p. 405, notes to secs.

432–435; High on Extraordinary Legal Remedies, p. 225, secs. 317–322; Field on Corporations, p. 585, sec. 507; Moses on Mandamus, pp. 155, 156, 168, 169; *Holiday* v. *Paterson*, 5 Or. 177; *Chicago etc. R. R. Co.* v. *Iowa*, 104 U. S. 161; *Ruggles* v. *Illinois*, 108 U. S. 526; *Union Pacific R. R. Co.* v. *Hall*, 91 U. S. 343; *Belfast etc. R. R. Co.* v. *Brooks*, 60 Me. 569.) It was present and not prospective business that the company was and is required to do. Its charter conferred a vast and valuable land grant on the company, and required it to establish "all necessary stations," etc., and operate a first-class road, and the question of present remuneration could not excuse the company from performance of such duty. It will be noted that when the commissioners, appointed by the president, at the request of the company, examined the railroad, the plaintiff in error had a freight and ticket office and agent at Yakima City, and afterwards removed the same to North Yakima. (Act of July 2, 1864, 13 Stat. 368.) The necessities and convenience of the public had required a town, and the legislature had determined that there was a town at Yakima City. When the plaintiff in error arrived, it saw a town, the largest it had entered for two hundred miles on its line. It at first afforded facilities for freight and passengers at the town, but subsequently built the rival town of North Yakima four miles away. By supplemental pleadings at the trial, it endeavored to take advantage of its own wrong, by showing that its refusal to stop trains at Yakima City had reduced and would ultimately destroy the town. But it can be noticed the present town is much larger and has more business than the greater majority of towns where plaintiff in error has placed stations along its line of railroad. (*Brown* v. *Piper*, 91 U. S. 37.)

Mr. Justice Hoyt delivered the opinion of the court.

This was a proceeding in the name of the territory to compel the defendant, the Northern Pacific Railroad

Company, to furnish for the convenience and use of the public a depot and other facilities for the transaction of business at Yakima City, in the county of Yakima. The case was heard on the pleadings and proofs, and a judgment, substantially as prayed for, rendered by the District Court which has been brought here by the defendant for review. The facts established by the pleadings and the findings of the jury thereunder were substantially as follows: —

In January, 1885, the defendant had completed its railroad up the Yakima Valley to and through Yakima City, and at its request such railroad had been duly examined and accepted by commissioners on the part of the United States as a section of its line duly constructed and finished under the charter of said company. For a short time during said month of January said company maintained an agency in said city for the transaction of freight and passenger business, but as soon as the said railroad reached a point about four miles beyond said Yakima City, where a town site had been laid out called North Yakima, it withdrew said agency from Yakima City and established it at North Yakima, and thereafter ceased to stop its trains at the former place, and ran directly through the same on to the latter, where it established passenger and freight depots for the transaction of business.

At this time Yakima City was the oldest town and largest business center on the Cascade branch of said railroad between the Columbia River and Puget Sound. It was the only town of any importance in Yakima County. It had for years been the county seat of said county, and was one of the three places in the Fourth Judicial District where causes arising under the constitution and laws of the United States could be heard and determined. It numbered five hundred permanent inhabitants; had several churches, flourishing public and private schools, a large number of business buildings,

and many beautiful homes. It was equipped for the transaction of and actually transacted a business of two hundred thousand or three hundred thousand dollars per annum, and had available grounds upon which the company could have located its depot and other buildings; while North Yakima was simply a town upon paper, with no inhabitants save a few speculators, who, being in the secrets of the company, had located there for the purpose of profiting by the building up of a town at the expense of Yakima City and its pioneers, many of whom had for years endured the hardships of frontier life in the hope that with the advent of a railroad such prosperity would be brought upon them as would repay every sacrifice. Not only was this the relative position of the two towns as to population, industries, etc., but so far as the proof discloses, there was no material difference in the natural adaptability of the two places by way of location or otherwise for a center of railroad business. From the time the company thus moved its agency for the transaction of its business to North Yakima, it not only refused to regularly stop its trains at Yakima City, but it also refused to stop any of its trains there at any time or for any purpose, and thus compelled all passengers therefore to pass directly through to North Yakima, and then return the four miles as best as they could; and all freight had to pay tribute to North Yakima in like manner. Such was the condition of things at about the time these proceedings were commenced, and the jury found that such would have been the condition of things at the time of the trial in the court below had the company continued to stop its trains at said Yakima City, and to give it facilities for the transaction of its freight and passenger business. It appears, however, that owing to the failure of the railroad company thus to stop its trains, the town had been to a certain extent depopulated; still at the time of trial the town contained two hotels, twenty-

seven dwelling-houses, thirteen business houses, one flouring mill, public and private schools, and a resident population of 150. It further appears that the said company furnished no facilities of any kind available to said town excepting at the said town of North Yakima. It was upon this state of facts that the court below acted, and in their light we must determine whether or not it acted correctly. We say that it is upon these facts that the case must be decided, for although there was a finding by the jury that the present facilities between North Yakima and Pasco were sufficient, we are of the opinion that the facts being conceded or found, the determination of what are proper facilities thereunder is a matter of law for the court, and not a question of fact for the jury. Did the facts above stated warrant the court below in rendering the judgment in question? We will first examine the matter in a general way, and then notice the particular points raised by the brief of appellant.

In the absence of legislation providing other means for regulating and controlling the matter, we have no doubt of the power of a court of general jurisdiction, in a proper case, to compel a railroad to extend to the public proper facilities for the transaction of business. This we deem to be a necessary incident to the character of a railroad and the rights it possesses, and the relation which it occupies to the public. Without this control, a railroad might be so managed as to be a public improvement only in name, while to all intents and purposes, so far as results were concerned, it would be a private road, from the benefits of which the mass of the public could without reason be, at the pleasure of the company, entirely excluded. We think that, in reason, this right of control is fully established, and if we investigate it in the light of authority, our conclusion will be assured; for while the cases upon the subject are not numerous, yet those that have been cited by counsel for

appellee, and others which we have examined, are of such authority and so conclusive in argument that we unhesitatingly accept them as the true exposition of the law upon the subject. (See *Railroad Co.* v. *P. & O. C. R. R. Co.*, 63 Me. 280; *State ex rel. Mattoon* v. *Republican Valley R. R. Co.*, 17 Neb. 647; *State* v. *Hartford etc. R. R. Co.*, 29 Conn. 538; High on Extraordinay Legal Remedies, 225, 227; *Ruggles* v. *Illinois*, 108 U. S. 526; Field on Corporations, 585; Moses on Mandamus, 155–169.)

That the city of Yakima was of such importance at the time the railroad reached it that the public interests required that depot facilities should be provided and trains stopped for the transaction of business is so apparent that nothing need be said to satisfy any unprejudiced mind in regard thereto. It is true that a town of five hundred inhabitants is not a large town, but when we take into consideration the fact that this town was the largest one for a distance of hundreds of miles, and that by its age and enterprise it had established itself as the center of business for that entire region, and grown to even that size without the aid of any railroad, it is clear to the moral as well as to the legal perception of every one that it was entitled to be fairly treated by the railroad, and to have extended to it the facilities usually given to towns of like size thus situated; and we are satisfied that there is not another instance on record where a town as remote from others as this one, of even half its size, has been reached and passed through by a railroad, and then had all facilities denied it at the will of the railroad company. That this town was entitled to the facilities claimed seems to have been assumed by the company at one time, as from the above facts we see that for a short time after the road was constructed through the town it furnished the same to as great an extent as could be expected of a newly constructed road. But as soon as the road reached a place four miles beyond, where the country was substantially unoccu-

pied and unmarked, save by a few stakes stuck in the ground, a change came over the company, and it all at once discovered that every reason that could be named or imagined pointed to this unoccupied spot as the proper place for its depot; and that Yakima City, which in the past, unaided by outside influences, had grown into a flourishing town, while the other had only grown bushes, was no longer entitled to be thought of in comparison therewith.

The reasons which led to this change, and to this preference of the new town, which seems not only to have been located for the purpose of absorbing the hard-earned business of Yakima City, but had inaugurated its career in that direction by stealing the best half of its name, does not clearly appear from the record, but enough does appear therein to plainly suggest the reason for such action. Upon general principles, then, it was the duty of the railroad company to have furnished the required facilities at Yakima City, and its failure to do so was a moral and legal wrong. But it is said that the rights of the parties must be governed by the condition of things at the time of trial, and not as of the date of the commencement of the proceedings. This may be so, but even if it is, we think that under the circumstances of this case, even the town as it existed at the time of trial was entitled to have trains stop, and to have depot facilities furnished for the accommodation of the public; for while it is true that the showing of business at such town during the few months preceding the trial was not flattering, yet as the decrease in business was not only the direct result of the decadence of the town by reason of the wrongful acts of the company, but was also no doubt much influenced by the fact that in order for any business to be transacted that would show upon the books of the railroad, it had to first go four miles away from the market center of the town, and then pay tribute to its rival. The town, small though it

was, thus decreased in importance, was entitled to the relief demanded, unless some of the objections to the proceedings raised by the appellant are of such a nature as to avail it as matter of defense herein.   We will proceed to notice such of them as we consider pertinent, which have not already been sufficiently covered by what we have said.

1. It is objected that, as the road was still in the hands of the construction department, it could not be required to furnish the facilities in question.   We think, however, that by causing such section of road to be examined and accepted by commissioners as fully completed, the company estopped itself from thereafter claiming that the same was still in process of construction, and that by such action the right and duty of the company to maintain and operate such section of road became fully vested and fixed.   Besides, we doubt whether the courts would allow a company, even while constructing its road, to so manage it as to crush out one town on its line for the benefit of a rival one a few miles away.

2. No demand for the facilities required was ever made upon the company.   That a demand would be necessary as a foundation of proceedings of this nature to establish a mere private right, is conceded; but it is claimed by appellee that this was a question of public right, and that the company was neglecting to perform a duty which it owed to the public, and that in such a case a demand was not necessary.   We think this claim is established by the facts and law of this case.   (See High on Extraordinary Legal Remedies, 203, 390; Angell and Ames on Corporations, 715; *Board of Commissioners of Knox Co. v. Aspenwall,* 24 How. 376.)

3. That the public were not interested, and that therefore Yakima City, and not the territory, was the proper party plaintiff.   But as we think the proof shows that the public were interested, and had rights to be protected and enforced, we cannot sustain this objection.

4. That the charter of the company vested in its discretion as to the location of its stations, and that this discretion could not be controlled by the courts. We do not think Congress ever intended to do more, by the section of the charter of the company upon which this claim is founded, than to authorize it in a general way to locate its stations where it might think necessary, and it seems clear that Congress never could have intended to make such company the sole judge in this matter, as between its own interest or favoritism, and the rights of the public at large. Such a construction would be clearly against public policy, and would only be adopted by the courts where no other was possible, and we do not think the language made use of in said section such as to oblige us to construe it as claimed by the company.

5. That the granting of the relief prayed for is an encroachment on the legislative power, and not the exercise of judicial authority. We have already indicated our views upon this point, and need only to say, in addition, that in our opinion the authorities cited by appellant are not in point, and do not warrant the construction placed upon them by counsel.

6. That the judgment rendered, directing the issuance of a peremptory writ ordered that the acts therein commanded should be performed immediately, and that as this was impossible, the judgment was void.

In our opinion, there is nothing in this position, as we think the judgment, fairly construed, did nothing more than to command that the duties therein enjoined should be entered upon at once and prosecuted with diligence until completed.

We think the court below committed no error, and it follows that the judgment must be affirmed, with costs, and the cause remanded for further proceedings, and it is so ordered.

GREENE, C. J., and LANGFORD, J., concurred.