[No. 129.  Decided January 16, 1891.]

THE STATE OF WASHINGTON, *on the Relation of the Nooksack River Boom Company,* v. SUPERIOR COURT OF WHATCOM COUNTY AND J. R. WINN, *Judge of said Court.*

PROHIBITION — MANDAMUS — SUPERSEDEAS — APPEAL.

The supreme court will not grant a writ of prohibition to restrain the superior court from further proceedings in an application for *mandamus,* where the superior court has already exercised jurisdiction and issued the writ of mandate, and no proper application was made at the hearing before the superior court to test its jurisdiction.

On an appeal from a judgment directing the issuance of a writ of mandate, it is error for the superior court to deny defendant's motion for a *supersedeas* of the writ pending the appeal, and to fix the amount of his bond therefor.

*Original Application for Prohibition.*

The facts are fully stated in the opinion.

*Black, Harris & Leaming,* for plaintiff.

*Thompson, Holcomb & Newman,* and *Evans, Sherman & Howard,* for defendant.

The opinion of the court were delivered by

STILES, J. — On the 3d day of November, 1890, the relator, the Nooksack River Boom Company, and the Bellingham Bay Boom Company, were rival corporations, organized under the act of March 17, 1890, entitled "An act to declare and regulate the powers, rights and duties of corporations organized to build booms and to catch logs and timber products therein." Laws 1889–90, p. 470. Both companies had their booms and works at the mouth of the Nooksack river, in Whatcom county; but the Nooksack company's boom was so much higher up, or further within the mouth of the river, that logs floating down the

river would reach its boom first; and, its boom being thus located, it had caught large quantities of logs floating down the river, some of which were the property of persons who had made arrangements with the Bellingham Bay company to raft and boom their logs; or, as it is termed in the papers here and in the act, "consigned" their logs to that company. The Bellingham Bay company claimed and demanded that all such consigned logs be passed by the Nooksack company free of charge, and be allowed to float on unhindered into the works of the former; but the Nooksack company denied this claim, and refused this demand, unless paid the sum of seventy-five cents per 1,000 feet, board measure, of the logs so detained, as permitted by the act in certain cases. Upon this the Bellingham Bay company, deeming itself aggrieved at the action and demand of the Nooksack company, sought redress by applying to the superior court of Whatcom county for a writ of *mandamus*, requiring the latter company to follow its construction of the law and let the logs go free, both as to those detained and as to all others which should thereafter be floated down the Nooksack river under consignment to its care. The method of presenting this application for a *mandamus* was as follows: On the 3d day of November the attorneys of the Bellingham Bay company delivered to Messrs. Harris, Black & Leaming, who were attorneys resident at Whatcom, and who, it appears, had theretofore been the usual attorneys of the Nooksack company, a notice in writing, purporting to be a notice in a cause in the superior court, and having as a caption the title of the court, and "Bellingham Bay Boom Company, plaintiff, *v.* Nooksack River Boom Company, defendant." It was addressed "to said defendant," and proceeded to give notice that at 2 o'clock P. M. on November 6, 1890, the plaintiff would apply to the superior court of Whatcom county for the issuance of a peremptory writ of *mandamus*, commanding the

defendant to pass the logs in question, etc. Reference was made in the notice to a "copy of motion and affidavits herewith served," and it was stated at the close of the notice that, "if you desire, you may appear at said time and resist the issuance of said writ." It was signed by the attorney of the plaintiff. The "motion" was a document bearing a caption exactly like that on the notice, and was substantially in the form of a complaint in a civil action, and prayed a peremptory writ of *mandamus*, commanding the defendant to remove the obstructions it had placed in the way of the passage through its boom of all logs consigned to the plaintiff, and to at once pass and permit to be passed, free of charge, all logs so consigned to it, and bearing certain proprietary marks, and any and all logs which in the future should be consigned to the plaintiff's boom. The motion was verified in the manner in which complaints are required to be verified, and to it were attached sundry affidavits of third persons, whose logs were among those alleged to be detained, who described their property, and stated various facts going to show a detention by the defendant. Harris, Black & Leaming indorsed upon a copy of the notice delivered to them: "Service of above notice accepted, and copies received, this 3d day of November, 1890," and signed themselves "Attys. for Deft."

The motion and supporting affidavits were filed in the superior court on the 6th day of November, but, probably through an oversight, the notice, with its acceptance of service, was not filed until November 8th. At the hour noticed, 2 o'clock, November 6th, the business before the superior court, with a jury in attendance, was suspended, in order that the plaintiff might make his application for a *mandamus*. One member of the firm of Harris, Black & Leaming, at least, was present in the court to represent the defendant; and, both sides having been asked if they were ready to proceed, answered in the affirmative. The defend-

ant's attorney thereupon orally objected to the court's taking any action upon the application, claiming that the procedure by motion was unauthorized; that it should have been commenced by the filing of a complaint and the issuance of a summons; that, not having been so commenced, the court had no jurisdiction of the person of the defendant; that there had been no service upon the defendant, but merely a notice to certain attorneys supposed to represent it; and that, finally, if the proper practice in *mandamus* was by motion, there must first be an alternative writ, which should be served upon the defendant, to which a return could be made at a time to be fixed in the writ.   The court declined to recognize the objections thus made unless the defendant's attorney would appear in the proceeding by some plea in writing, and urged him to file such papers as he deemed material; but this the attorney refused, and requested the court first to rule whether the plaintiff had any standing upon the proceeding by motion, to which the court again declined to accede.   Defendant's attorney then contented himself with his position, and plaintiff's attorneys demanded the relief asked be allowed as matter of course.   The court took the matter under advisement until the next day, and on the morning of November 7th, at the opening of the court, announced an oral decision in favor of the plaintiff, and granted the peremptory writ; whereupon the defendant's attorney, without waiting for the formal entry of the judgment, or the issuance of the writ, or making any motion or appearance gave notice of an appeal from the judgment to this court, which notice was entered upon the minutes of the court by the clerk.   Shortly after giving notice of appeal, on the same day, and without the knowledge or leave of the court, defendant's attorney filed with the clerk a purported answer to the motion for the writ, supported by a number of affidavits.   On the afternoon of the same day, the plaint-

iff's attorneys submitted to the court proposed forms of a judgment and writ, in accordance with the oral decision, which, after inspection by defendant's attorney, on November 8th, the court ordered to be entered and issued as of November 7th. The writ was served upon the defendant on the 8th day of November, by the sheriff of Whatcom county; and on the same day the defendant filed a motion to stay the writ pending its appeal, and to fix the amount of a bond therefor, which motion, after argument, the court denied, November 10th. On the 12th of November the defendant also filed a motion in the superior court to vacate its judgment and recall its writ, but this motion was not heard or otherwise disposed of. This completes the material part of the history of the case in the superior court. On the 12th day of November the relator, the defendant below, applied to this court for a *supersedeas* to stay any further action in the case in the superior court until the cause could be heard on the appeal, and for a writ of prohibition to restrain that court from any further proceedings whatever, other than the signing of a bill of exceptions. This application was granted to the extent of an order to show cause why such relief should not be given, with a temporary restraining order until the matter could be heard; and from the return of Hon. J. R. Winn, judge of the superior court of Whatcom county, to the order to show cause, we gather the facts as above stated, with the exception of those preceding the appearance of the parties in that court.

Upon this state of facts the question is, what should be done, having due regard to the accomplishment of justice, and the preservation of a dignified and orderly course of procedure in the courts of the state? This court undoubtedly has the power to issue writs of prohibition to the superior courts of the state in proper cases, but in so doing it must be guided by the rules of law applicable to such

extraordinary proceedings, and must not in any case overstep the bounds of necessity in any spirit of zeal for the redress of what it deems an injustice.  To justify the issuance of a writ of prohibition from a superior to an inferior court, it must clearly appear—*first,* that the inferior court is about to take jurisdiction of a matter of which by law it has no jurisdiction; *secondly,* that there is still something which the inferior court is about to do under its claim of jurisdiction; *thirdly,* that an application has been made to the inferior court for a decision that it has not jurisdiction of the subject-matter involved, which has been refused; and *fourthly,* that there is no other proper remedy.  Measuring by these requisities, we should not be warranted in granting the writ of prohibition at this time.  Before the application was made to this court the jurisdiction had been taken and exercised by the superior court, and its judgment had been entered, and its writ issued and served; therefore, nothing remained for it to do in the case.  True, upon a refusal of the defendant to obey the writ, the court could attach its officers, and punish them by fine and imprisonment; but it might never have done so, and it was not threatening to do so on the 12th day of November.  No proper application was made to that court to test the question of its jurisdiction over the subject-matter, if indeed that subject was mentioned at all in the discussion at the hearing.  The practice in *mandamus,* and the question whether there was jurisdiction of the person of the defendant, were discussed informally, without plea or motion; but for all it amounted to, the attorney for the defendant might as well have remained mute, or absented himself entirely. The writ was allowed substantially *ex parte,* the defendant merely standing by as a spectator.  Subsequently an answer was filed, and the court was asked to rehear the matter, and a motion was made to vacate the judgment and recall the writ; but these attempts came after the notice of appeal,

which operated as a general appearance of the defendant, and cut off all further proceedings in the superior court excepting those necessary to the perfection of the appeal. Had the relator, without giving its notice of appeal and thus submitting its person to the jurisdiction, at once applied to this court for a writ of prohibition on the ground that the superior court had no jurisdiction of the subject-matter of the proceedings, viz., of a proceeding in *mandamus* to enforce the asserted rights of the plaintiff, the result of its application might have been entirely different; but we do not pass upon that matter, for the reason that it seems to be necessarily involved in the case coming before us on appeal. It remains to be considered whether there is any other relief in the premises to which the relator is entitled.

It is shown by the record that on the 8th day of November the relator applied to the superior court, by motion, to have the amount of its bond on appeal fixed, and for a stay of proceedings under the judgment and writ of *mandamus* pending the appeal, which motion the court denied on the 10th of November, on the ground that the filing of a bond would not act as a *supersedeas* or stay of execution of the writ of *mandamus.* And herein, as we view the matter, lies the true cause of complaint of the relator. The writ of *mandamus* being originally, in its English origin, a writ of the highest prerogative character, was, for that reason, excepted from the category of judicial decrees which were suspended by an appeal to a higher court. But in the United States, with but few, if any, exceptions, the idea of prerogative has been abandoned, and the writ has come to be regarded much in the nature of an ordinary action between the parties, to be issued or not, according as the party aggrieved may or may not show himself entitled to that peculiar species of relief; or, in other words, an action for the enforcement of a right in cases where the law affords no other adequate means of

redress.  And a judgment in a *mandamus* proceeding, as in case of an ordinary action at law, is subject to review by writ of error or appeal upon like conditions as in other cases.  See High, Ext. Rem. § 4, and notes of cases. Now, this modern and American theory of *mandamus* would seem to place this remedy, and the judgment and writ consequent upon it, precisely on a level with ordinary judgments and orders of courts in other cases; and it is a well settled rule that while a *supersedeas* bond does not stay any part of a judgment which commands the party against whom it runs to refrain from doing any act covered by the judgment, yet, where the judgment requires a party to perform some affirmative act, an appeal stays the immediate necessity for the performance, and prevents the court which rendered the judgment from punishing as a contempt the failure to perform, until the conclusion of the case on appeal.  But if there be any doubt as to the general rules thus rehearsed, and their application to the proceeding in *mandamus*, we hold it to be clearly resolved in this state by § 701 of the code, which declares that not only may appeals or writs of error be taken from judgments directing writs of mandate, but that they may be taken "in like manner and [with like] effect as in civil actions."  Therefore, inasmuch as the peremptory writ in this case, in so far as it had any legal effect, commanded the relator to do an act which it seeks by its appeal to relieve itself from doing, and the doing or not doing of which is the kernel of the whole controversy, it is proper that, under sufficient security that it will obey the judgment and writ if the final determination of the cause on appeal be against it, it should have had the amount of such a security fixed, and upon the filing of its bond all proceedings looking to the enforcement of the writ should have been stayed.  In refusing this right the superior court erred, and the correction of its error is, we conclude,

the proper remedy to apply. This conclusion, when carried out, will be substantially a *mandamus* to the superior court of Whatcom county requiring it to fix the bond as prayed for in the defendant's motion of November 8th, the effect of which bond, when filed, will be to stay any further proceedings looking towards the enforcement of the writ. Let an order to that effect issue; costs to the relator.

ANDERS, C. J., and DUNBAR, J., concur.

HOYT and SCOTT, JJ., concur in the result.