[No. 506. Filed March 11, 1892.]

THE STATE OF WASHINGTON, *on the relation of J. A. Rochford, Prosecuting Attorney of Yakima County*, v. THE SUPERIOR COURT OF YAKIMA COUNTY AND SOLOMON SMITH, *Judge.*

WRIT OF PROHIBITION—WHEN LIES—STENOGRAPHER'S FEES—LIABILITY OF COUNTY.

A court has no power to charge a county with the expense of a stenographer's notes of the testimony upon the trial of a civil action, although the case may involve many parties and conflicting rights.

The prosecuting attorney of a county is the proper relator in an application for a writ of prohibition to prevent a court from en-

forcing payment of stenographer's fees against the county in a civil case.

Prohibition will lie against a court which threatens to enforce by contempt proceedings the issuance of a county warrant in payment of a stenographer's fees which are not a proper county charge.

*Original Application for Prohibition.*

The facts are stated in the opinion.

*F. H. Rudkin,* for relator.

*H. J. Snively,* and *D. J. Crowley,* for respondent.

The opinion of the court was delivered by

STILES, J.—The relator is the prosecuting attorney of Yakima county; the respondent, Hon. Solomon Smith, is the superior judge of Klickitat county, and, by reason of the disqualification of Hon. Carroll B. Graves, superior judge of Yakima county, to try a certain cause, entitled Benton *et al. v.* Johncox *et al.,* Judge Smith was, in December last, called to preside at the trial of that cause. The cause thus on trial is a civil action, to which neither the state nor Yakima county is a party. On the 18th day of December the court made an order directing A. L. Slemmons, "court stenographer," to make two copies of his notes of the testimony, allowing twenty cents per folio to him therefor. On the 12th day of February, 1892, Slemmons presented a claim against Yakima county for $27.60 for 138 folios of testimony transcribed by him, which was on the same day allowed by the court, and the auditor of the county was, in the order of allowance, commanded to issue a warrant upon the county treasury for the amount. On the same day (February 12) the court, apparently for the purpose of having upon the record its reasons for ordering the payment of the stenographer's fees, caused a second order to be made, and dated back to the time of the original order, December 18, as follows:

"It appearing to the court in this cause that this is an

equity cause, involving the rights of 128 persons to use the waters of a certain stream of water in Yakima county, and that each of said persons claims separate and equitable relief, and that a great amount of testimony must be taken in order to determine these rights, and the court being of the opinion that it cannot properly discharge the duties devolved upon it in trying this cause without the testimony is taken by a stenographer, under the control and supervision of the court: Therefore be it ordered, that A. L. Slemmons, a stenographer, be and he is hereby appointed by the court to make a stenographic report of the evidence and proceedings in this case, and transcribe the same for the use of the court."

The auditor, under the advice of the relator and the county commissioners, refused to issue the warrant, and was on February 15 cited to appear and show cause why he should not be punished for a contempt, special counsel being assigned by the court to prosecute the delinquent. He was forthwith adjudged to be guilty, but judgment was suspended because he answered that he had acted under the advice of the relator. But by the same order special counsel were directed to inquire into the conduct of the relator and the commissioners, with a view to meting punishment to them for their alleged contumacy in advising the auditor. The auditor, under the pressure of the proceedings against him, issued the required warrant. On February 16 one Lesh, a citizen taxpayer of Yakima county, commenced an action in the superior court to restrain the auditor from issuing his warrant for this sum of $27.60, and another similar allowance made to the stenographer, and applied to the court for a restraining order, which was refused.

It appears that at the time the petition was filed here the case of Benton *v.* Johncox had been on trial for twenty-one days; that its trial would consume from twenty to thirty days more, and that the fees of the stenographer will foot up to nearly or quite two thousand dollars. And it

is alleged, without contradiction, that from time to time orders will be made requiring the auditor to draw and issue to the stenographer warrants for partial payments to him, which will be followed up by contempt proceedings, as in the instance already mentioned; or that, if the auditor shall yield and issue warrants as ordered, a number of such warrants will be uttered, which will pass into the hands of third parties, rendering much litigation necessary to prevent their collection from the county.

The main contention is, that upon the trial of a civil action the court has no power to charge the county with the expense of a stenographer's notes of the testimony. That it can do so is certainly a novel proposition, and it is one for which the able counsel for the respondent cite us to no precedent. In a civil action the production of their proofs rests with the respective parties. The state and its instrument, the county, furnish the courts and their necessary officers and records, but every service, except that of the judge, is compensated in money fees exacted from the parties. The witnesses are heard, and, unless the parties otherwise provide, their testimony rests only in the memory of the judge who hears it. In this there is no difference between legal and equitable actions, or between long or short cases. All stand upon the same footing.

The second order in Benton *v.* Johncox was based upon the assumed impossibility that the court could properly try a case involving so many parties and conflicting rights without the aid of a stenographer; but it certainly has not heretofore occurred that parties to so complicated a case would omit to furnish, at their own cost, the means by which the court's action could be guided with certainty, and we are not convinced that it would be so in this instance.

Appeal is made by the respondents to the code of procedure, § 49, for support in this juncture. But what we

3—4 WASH.

find there is scarcely anything, if it be anything, more than was the common law of courts of general jurisdiction before its enactment into a statute. This court might as well say that because the prime necessity to its exercise of any jurisdiction at all in causes appealed to it is the record, the county or the state should therefore furnish these in civil cases, or that, inasmuch as we cannot, with any degree of convenience, transact the business of the court without printed briefs, the state printer should be at our service in that particular. *State, ex rel. Cooper, v. Auditor, etc.,* 19 Ohio, 116, and *Stowell v. Jackson Co. Supervisors,* 57 Mich. 31, which support court orders against county treasuries, were both made in capital criminal cases, where the state was a party, and the purpose served was the sustenance of juries, and can have no analogy to this matter. A county is a somewhat peculiar institution, against which claims are not enforced unless they are warranted by some plain provision of law. 4 Amer. & Eng. Enc. of Law, p. 359; *Rasmusson v. Clay Co.,* 41 Minn. 283 (43 N. W. Rep. 3); *Turner v. Woodbury Co.,* 57 Iowa, 440 (10 N. W. Rep. 827); *Foster v. Clinton Co.,* 51 Iowa, 541 (2 N. W. Rep. 207); *Union Co. v. Slocum,* 16 Or. 237 (17 Pac. Rep. 876). In the last cited case the claimant took down testimony in a criminal case under the order of a judge of a court of record, sitting as a committing magistrate, but his bill was disallowed because no statute authorized it.

It is said, however, that the fees of a stenographer could not be taxed as costs against the losing party. If it be so (which we do not presume to decide, as it is not in this case), the conclusion that the county must pay it hardly follows. The case cited from Idaho (*McDonald v. Burke,* 28 Pac. Rep. 440) merely held in substance that, under the statute of that state, only fees paid to an official stenographer could be allowed.

Passing now to objections raised to the issuance of the writ asked by petitioner, it is urged, in the first place, that the prosecuting attorney of the county is not the proper relator.   But we think it would be a strained construction of the proprieties to hold that the officer whose duty it is made by statute to represent the state and county in all civil actions and proceedings in which they are parties, should not upon his own oath state the facts which constitute the basis of this proceeding.   In *Northern Pacific R. R. Co. v. Territory,* 3 Wash. T. 303 (13 Pac. Rep. 604), the prosecuting attorney's relation for a *mandamus* was sustained, because it was held that the establishment of a railroad depot at Yakima City was a matter of public interest, and certainly the direct payment of money out of the county treasury is of far greater moment.   Prohibition is said to be the converse of *mandamus,* but the same degree of strictness as to parties is not maintained. High, Extraordinary Legal Rem., §§ 764, 779.

The respondents, in response to the alternative writ, file the affidavit of the auditor of Yakima county, in which he says that he does not apprehend any further proceedings for contempt against himself, and knows of none that are threatened.   This, it is claimed, shows that there is no necessity for the further interference of this court, upon the principle that writs of prohibition are only issued to prevent threatened judicial acts in excess of jurisdiction.   But it may be easily supposed that the auditor, having been once disciplined, and being now under a suspended judgment for contempt, will not again take any chance of like treatment, but will quietly obey each order for the issuance of a warrant, and thus be able to say that he does not apprehend further proceedings against him with perfect truthfulness.   We do not suppose, however, that this proceeding was commenced to protect the auditor, who is abundantly able to take care of himself by appeal or *habeas*

*corpus,* or some other appropriate remedy.   The real object of it is to protect the credit and the treasury of Yakima county against what are deemed to be unauthorized demands upon them, made in such a manner and with such an appearance of authority that much mischief and litigation will be caused unless they can be anticipated and prevented.

Lastly, it is strongly urged that this is not a case for the prohibition of a superior court or the judge thereof, even admitting that the stenographer's fees are not a proper county charge, and that more of the threatened orders will be made and warrants issued thereon.   Were it not for the pronounced attitude of the court in the proceedings had before it, and its apparent intention to overwhelm all opposition by contempt proceedings, the case might not have been placed in such an attitude as to require or justify the issuance of this writ.   Had the court gone no further than to allow the claim of the stenographer, and then left him to the usual remedies of one holding an allowed claim against a county, for which the auditor refuses to issue a warrant because of the alleged illegality of the demand, a suit of some kind would have followed, from which an appeal on the merits could have been taken, and no warrant would have issued until its determination.   But, as is apparent from the record here, the new order will certainly be enforced with all the vigor which characterized the first one, and long before any appeal could be heard (if indeed an appeal would lie from such an order) numerous warrants would be issued and take their place among the recognized liabilities of the county, and perhaps be paid by the treasurer.

In *State v. Superior Court,* 2 Wash. 9 (25 Pac. Rep. 1007), we laid down the jurisdictional requisites for a prohibition of a superior court, viz.: (1) That it is about to take jurisdiction of a matter of which, by law, it has no

jurisdiction. (2) That there is still something which it is about to do. (3) That an application to it for a decision that it has not jurisdiction has been refused. (4) That there is no other proper remedy. To substantially the same effect is *State, ex rel. Reed, v. Jones,* 2 Wash. 662 (26 Am. St. Rep. 897). In the former case the writ was refused because the thing complained of had already been done; in the latter there was the same result, because it was held that the superior court had general jurisdiction to issue injunctions, and that there was an adequate remedy by appeal.

Counsel insist that the county has an adequate ultimate remedy, when it shall be sued for the amount of the warrants, or by injunction against the treasurer forbidding their payment, if they are unauthorized evidences of its indebtedness. But it would be apparent that any resort to such relief must be at great cost, and through much litigation, besides the probability that innocent parties would be defrauded by the acquisition of these numerous warrants for value. For, while both parties agree that the infirmity of their illegality would follow these warrants into whose ever hands they might come, it remains that they do not express upon their face any statement of the purpose for which they were issued, and that they are well calculated to deceive the ordinary buyer.

We are of opinion that, under all the circumstances, the respondents should be prohibited from doing the acts complained of, and it is so ordered.

SCOTT, DUNBAR and HOYT, JJ., concur.

ANDERS, C. J., not sitting.