[No. 10666.  Department One.  September 28, 1912.]

T. G. COOPER, *Respondent*, v. W. J. HINDLEY *et al.*,
*Appellants.*[1]

APPEAL—SUPERSEDEAS — WHEN GRANTED — BOND INSUFFICIENT—
STATUTES.  Rem. & Bal. Code, § 1722, authorizing a stay of proceed-
ings on appeal, upon the giving of a bond conditioned to pay all
damages suffered by the delay, has no application to an appeal from
a judgment in mandamus directing city commissioners to call an
election upon amendments to the city charter proposed by the elec-
tors, since there can be no damages to measure and no liability on
the supersedeas bond.

APPEAL—SUPERSEDEAS—BY SUPREME COURT.  The supreme court
will not grant a supersedeas on appeal from a judgment in man-
damus directing the submission of amendments to a city charter
where it would unreasonably delay the taking of a popular vote;
since it is a matter involving popular right in which the writ of
*audita querela* would not issue.

Motion filed in the supreme court August 29, 1912, for
a supersedeas.  Denied.

*H. M. Stephens*, for appellants.
*Morrill, Chester & Skuse*, for respondent.

CHADWICK, J.—Under the initiative power reserved in the
freeholders' charter, certain electors of the city of Spokane
filed a petition with the city clerk, praying and requesting
that certain proposed amendments to the city charter be
submitted to the people.  It is alleged that, notwithstanding
the charter imposes a mandatory duty upon the commis-
sioners of the city to call an election within thirty days after
filing the petition, for the purpose of submitting the pro-
posed amendments to the whole electorate of the city, the
commissioners, the defendants, have wholly neglected, failed,
and refused to call such election or to give any effect what-
ever to such petition.  The refusal of the commissioners

[1]Reported in 126 Pac. 916.

being manifest, plaintiff brought a proceeding in mandamus to compel the commissioners to order and give notice of such election. Defendants answered, justifying their refusal and setting up their belief that, under the constitution and laws of the state of Washington, they had no right or authority to act upon the petition, or to call a special election, or to refer the matter to the people at any election other than at a general municipal election, which will not occur until the first Monday in November, 1913. The matter coming on before the superior court of Spokane county, it was ordered that a peremptory writ of mandamus issue. Whereupon defendants gave notice of appeal and filed a bond, conditioned both as a bond on appeal and as a supersedeas. The record is incomplete but, from the argument and briefs, we take it that the court below has refused to treat the bond as a stay bond. At any rate, the parties defendant are here asking us to fix a supersedeas to save them from the penalties of a threatened contempt proceeding, pending a hearing upon the merits.

It is the contention of the defendants that they have a right of appeal, and that their remedy is wholly by appeal. We are not disposed to question this right, nor are we willing to hold that defendants cannot review the judgment of the lower court by writ of certiorari. They say that a right of appeal being secure, the right to supersede the judgment follows as an incident under the statute governing appeals in civil cases. Rem. & Bal. Code, § 1722. Defendants rely upon: *State ex rel. Nooksack River Boom Co. v. Superior Court*, 2 Wash. 9, 25 Pac. 1007; *State v. Sachs*, 3 Wash. 96, 27 Pac. 1075; *State ex rel. German-American etc. Sav. Bank v. Superior Court*, 12 Wash. 677, 42 Pac. 123; *State ex rel. Denham v. Superior Court*, 28 Wash. 590, 68 Pac. 1051; *State ex rel. Norris Safe & Lock Co. v. Superior Court*, 30 Wash. 177, 70 Pac. 256; *Packenham v. Reed*, 37 Wash. 258, 79 Pac. 786; *State ex rel. Holcomb v. Yakey*, 48 Wash. 419, 93 Pac. 928; *Boothe v. Summit Coal Min. Co.*,

59 Wash. 610, 110 Pac. 536; *State ex rel. Puget Sound Elec. R. v. Mitchell,* 60 Wash. 660, 111 Pac. 873. These cases, except 60 Washington, which really rested upon a special statute, are in keeping with the holding of the court in *State ex rel. Nooksack River Boom Co. v. Superior Court,* 2 Wash. 9, 25 Pac. 1007, where it is said:

"Therefore, inasmuch as the peremptory writ in this case, in so far as it had any legal effect, commanded the relator to do an act which it seeks by appeal to relieve itself from doing, and the doing or not doing of which is the kernel of the whole controversy, it is proper that, under sufficient security that it will obey the judgment and writ if the final determination of the cause on appeal be against it, it should have had the amount of such a security fixed, and upon the filing of its bond all proceedings looking to the enforcement of the writ should have been stayed."

On the part of the plaintiff it is said that to grant a supersedeas in a case of this character would be a vain and useless thing; that it would not operate to protect plaintiff and those concerned with him, for there can be no damages to measure, or right of person or of property to protect; that its only office would be to delay a popular right, already delayed since May, 1912, until November, 1913; and in support of these contentions the case of *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609, is cited; and also, *State ex rel. Lambert v. Superior Court,* 59 Wash. 670, 110 Pac. 622. In the first case a question of public or popular right was involved, and a supersedeas was denied both by the trial court and by this court. In view of the seeming conflict between this case and those cited by defendants, it is a matter of regret that the reasoning of the court was not made a matter of record in the *Boyd* case. It stands only as a naked authority in plaintiff's favor. In the *Lambert* case a supersedeas was denied by the trial court, and the original case was brought here by a writ of certiorari. This case, while in no sense binding upon this court, nevertheless voices the opinion of a learned trial judge that a supersedeas

should not be granted in a case of popular right. Although this court has said with frequent affirmation that a supersedeas will be allowed in all cases, it is recorded that it has been twice denied by a superior court and once by this court in cases like unto this. This seeming conflict impels counsel for defendants to insist that, if a supersedeas be not now allowed, we will be compelled to overrule all of our former decisions save the case of *Hindman v. Boyd.* If, casually considered, it would seem to be so; but a review of the cases relied on, and a careful consideration of the question in the light of the present appeal, impels us to hold that the cases are not in conflict, and that a proper decision was rendered in each of them.

Our practice of superseding judgments is in substitution of the common law writ *audita querela.* 37 Cyc. 597. This writ was issued in an independent proceeding in the nature of an equitable suit, brought for relief against an unjust judgment, and the parties were required to plead to the issue. 1 Bacon's Abridgment, Title, Audita Querela; *Brooks v. Hunt,* 17 Johns. 484; *Lovejoy v. Webber,* 10 Mass. 101. Such procedure not only tended to delay the law, but often resulted in the loss of the fruits of a judgment lawfully obtained. Hence, the use of the writ became obsolete upon the framing of statutes giving a right to stay a judgment upon condition that a bond be given to secure its payment or performance. From the very nature of the statute, it is implied that the loss or damage suffered by the delay may be met by a money award. Unless the loss can be so met, a stay is not ordinarily granted. Hence, a supersedeas is never allowed to stay a self-executing judgment. *State ex rel. Martin v. Poindexter,* 43 Wash. 147, 86 Pac. 176; *State ex rel. Holcomb v. Yakey,* 48 Wash. 419, 93 Pac. 928.

Now, in the case at bar, there is no party in interest who could claim a damage, for there is no measure. Nor could there be a recovery, for there can be no loss. The proffered bond is a mere formality. The stay, if allowed, could be

ordered without it, under the general equity powers of the
court. The party in interest is the public, represented by
plaintiff and his fellow petitioners, and defendants are the
officers and servants of the people. To admit defendants'
contention that a supersedeas follows an appeal in all cases
and of whatever nature, we must hold that a supersedeas
follows as a matter of right. This would be inconsistent
with what we conceive to be the intent and spirit of the
statute, as well as many decisions heretofore pronounced by
this court. In *State ex rel. Gibson v. Superior Court*, 39
Wash. 115, 80 Pac. 1108, 109 Am. St. 862, 1 L. R. A. (N.
S.) 554, the right to supersede a judgment was carefully
considered in the light of the authorities, and the court
noticed the distinctions existing before the adoption of
statutes allowing a supersedeas, and held that a stay could
not be had as a matter of right. This case was followed in
*State ex rel. Burrows v. Superior Court*, 43 Wash. 225, 86
Pac. 632, where is is said: "It is discretionary whether such
courts shall suspend a doubtful decree pending appeal." In
*Lund v. Idaho & Washington Northern R. Co.*, 48 Wash.
453, 93 Pac. 1071, the general equity power of the court
to suspend or to refuse to suspend its decrees pending an
appeal is reaffirmed. In that case the court said: "Such a
supersedeas, however, should not be granted if it will result
in preventing the respondents from ultimately securing
equitable relief to which they will be entitled in the event
of an affirmance of the judgment."

In *Campbell Lumber Co. v. Deep River Logging Co.*, 68
Wash. 431, 123 Pac. 596, after declaring the discretionary
power of the court, a supersedeas was granted upon the
ground "that justice and the peculiar equities of the situa-
tion" demanded it. It goes without saying that, had the
statute been accepted as mandatory in all cases, this court
as well as trial courts, should not have denied a stay on the
one hand or granted a supersedeas having reference to the
peculiar equities of the situation on the other. The statute,

Rem. & Bal. Code, § 1722, does not apply, therefore, unless the justice and equities of the case can be met and measured by the condition of the bond therein prescribed; or, in other words, in cases where an *audita querela* would have issued at common law to protect private right or property. We, therefore, find no basis upon which to rest a right to supersede the judgment in this case. In a case involving a public question or a popular right alleged to be secured by statute or charter of a self-governing city, we have no hesitation in saying that, if it appear probable that the granting of a supersedeas would unreasonably delay the determination of a right to take a popular vote upon a public question, the case is within the spirit if not the letter of the cases just cited.

Having found that we have a discretion in the instant case, it would appear that the case might be rested upon a deeper principle than the one heretofore discussed. There can be no good government unless the people are satisfied. Without contentment the social compact cannot endure. No government has ever remained free unless the right of petition has been kept inviolate. The right of petition was an ancient right under the common law of England. It was recognized in 13 Car. II, Stat. 1, chap. 5; and confirmed in 1 W. & M. Stat. 2, chap. 2. The colonies, no doubt, would have been willing to remain attached to the throne of England had not their right of petition been denied. The fact that those in authority refused to hear our pleas was the supreme cause of our Revolution. That denied, there was added to positive wrongs and oppressions the bitterness of resentment, which has been in all times the essence of revolution against the tyrant. In the charter of our liberties—the Declaration of Independence—the wrongs of the colonies are recapitulated, and it is said: "In every stage of these oppressions, we have petitioned for redress in the most humble terms. Our repeated petitions have been answered only by repeated injury." So thoroughly was the right of petition impressed upon the American people as a right inviolate that it is written in

the constitution of the United States and is to be found in the constitution of this and of every other state. A petition, when secured as in this case by a positive provision providing for the manner of its exercise, should not be postponed in its hearing, unless controlling statutes of the constitution of a state makes delay imperative. The people are sovereign, and their voice, when properly asserted, is the supreme law of the land; and until negatived upon a popular vote, the petition of a number equal to the percentage fixed by law must stand in this court and all others as the present declaration of popular desire. So, in this case, it seems that, if the right to stay the judgment of the lower court is inconsistent with, or might tend to delay for an unreasonable time the expression of a popular will, the court should, in aid of that justice which is common to all, deny a petition which, if allowed, would have the force and effect of an injunction, pending a hearing the time of which is uncertain. It does not require technical or legal reasoning to find the principle to which we have adverted. It is as apparent to the layman as to the lawyer. When the governing body of Spokane sought to defeat the right of the citizens to frame its present freeholders' charter (the *Lambert* case) and to change its form of government, and was ordered by the mandate of the superior court to call an election that the people might act, the leading newspaper in the eastern part of the state, in recognition of the right of the people to be heard, applauded the act of the trial judge, and although not mentioning in terms the right of petition, affirmed the principle, saying:

"Judge Sullivan's statements at the time of issuing the writ of mandate ordering the city council to call a special election for the choosing of 15 men to revise the city charter are so simple and axiomatic as to surprise the ordinary man that the city council should have made an appeal to the courts necessary. To carry the case to the supreme court will only result in delay and expense in an attempt to defeat both the spirit and the purpose of the law. 'The court is here to enforce the laws as they are written,' said the judge. 'The

law says the council shall call an election upon the filing of the petition. There are no "ifs" and "ands" about it.' In this case a petition was filed which contained several hundred more signatures than the law requires for the calling of such an election, yet the city council refused to recognize its sufficiency. After this refusal the council did pass a resolution to hold an election nearly a year later. This was clearly a greater delay than could be justified. . . . Had the councilmen obeyed the law as promptly as Judge Sullivan is enforcing it, all of this confusing litigation would have been avoided."—Spokesman-Review, July 24, 1910.

This quotation is not cited as authority, for our holding does not depend upon authority. It is quoted merely as an illustration of the fact that the fundamental principles underlying free government are above the law as it is written in statutes, and are known and understood of all men. It may be that, upon the merits of this case, defendants can show legal and sufficient cause for refusing to obey the mandate of the court. But the question being one of public right, we must refuse to stay the arm of the law, for it is our judgment that the statute relied on, Rem. & Bal. Code, § 1722, was not ordained to cover such cases.

On the face of the proceeding, as we now have it before us, the plaintiff and those who are similarly situated have complied with the charter provision allowing a certain number of the citizens of Spokane to call for an election to pass upon charter amendments, and defendants will not be heard upon an application for a supersedeas to delay or defeat that right. Their objections call for a construction of the charter of the city as well as the constitution and general law of the state; and if valid, can only be heard when this case comes on for hearing on the merits or by a writ of certiorari. Of the merits of the case we express no opinion.

Motion denied.

GOSE, ELLIS, PARKER, and CROW, JJ., concur.