[No. 552. Decided April, 8, 1892.]

THE STATE OF WASHINGTON, *on the relation of P. V. Wie-senthal, Appellant,* v. D. T. DENNY *et al., Respondents.*

MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTER—PUBLICATION—ELECTION—SUFFICIENCY OF VOTES.

Under art. 20, § 1 of the charter of the city of Seattle, providing that proposed amendments thereto, if agreed upon by three-fifths of the members of each house of the city council, should, after publication for ten consecutive days in the city official newspapers, be again submitted to each house of the city council for passage, "where it should pursue the same course before the council and mayor as is pursued by an ordinance," such proposed amendment may, upon its second submission to the council, be amended by either house, and ten days' further publication before its passage is unnecessary.

The fact that the notice of election and ballots purported to split up the propositions for amendment so as to require thirty-seven expressions by the voter to reach them all, while the thirty days' publication of the proposed amendments, as required by charter, was made in the form of seventeen consolidated propositions as they passed the council, is immaterial.

Under art. 10, § 11 of the constitution, providing that a freeholders' charter may be amended by proposals therefor, submitted by the legislative authority of the city "at a general election," and ratified by a majority of the qualified electors voting thereon, all the vote necessary for ratification is a majority of those voting upon the proposition for amendment, and the limitation in the charter itself requiring amendments, submitted at a general or special election, to be ratified by a "majority of all lawful voters voting thereat," cannot be construed as meaning a majority of all the votes that may be cast at such election upon other measures or candidates.

*Appeal from Superior Court, King County.*

Action on the relation of P. V. Wiesenthal for a writ of mandate against the members of the city council of the city of Seattle, to compel said city council, as a canvassing board, to declare him elected a delegate to the city

council from the Third ward of said city, at the election held March 8, 1892.

*Edgar Lemman,* and *Junius Rochester,* for appellant.
*George Donworth,* and *Battle & Shipley,* for respondents.

The opinion of the court was delivered by

STILES, J.—The constitution, art. 11, § 10, provides that the freeholders' charter of any city of the first class may be amended "by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election after notice of said submission, published as above specified (*Wade v. Tacoma, ante,* p. 85), and ratified by a majority of the qualified electors voting thereon." Subdivision 38 of § 520, Gen. Stat., contains the only legislative reference to such amendment, by enumerating as among the express powers of such cities the power "to provide in their respective charters for a method to propose and adopt amendments thereto."

Sec. 1 of art. 20 of the charter of the city of Seattle, is as follows:

"SECTION 1. Any amendment or amendments to this charter may be proposed in either house of the city council, and if the same shall be agreed to by not less than three-fifths of all the members of each house, such proposed amendment or amendments shall be entered upon the journal of each house, with the yeas and nays of such house thereon, and shall for ten consecutive days (excluding Sundays), beginning within five days next after the passage thereof, be published in the city official newspapers, and shall, not less than sixty nor more than ninety days after the first publication, be again submitted to each house of the city council for passage, and pursue the same course before the council and mayor as is pursued by an ordinance, and if, upon such resubmission, the same be agreed to again in each house by not less than three-fifths of all the members thereof, and be not returned by the mayor with his objections, or be passed notwithstanding his objections

by not less than two-thirds of such members, such proposed
amendment or amendments shall be submitted to the qual-
ified voters of the city for their ratification at the next
general election, or at a special election to be called for the
purpose by the city council before such general election;
and if at such election a majority of all lawful voters *voting
thereat* shall by their votes ratify any amendment so sub-
mitted, the same shall thereby become a part of the city
charter, and, within five days after such election, be by the
mayor, in proclamation published in the city official news-
papers, proclaimed a part thereof: *Povided,* That if more
than one amendment be submitted, the same shall be sub-
mitted to the voters at such election in such a manner that
they may vote for or against each amendment separately,
and the city council shall cause every amendment that is
to be submitted to be published for at least thirty days
(excluding Sundays) next proceeding such election in the
city official newspapers."

Sec. 1. art. 4 of the charter provides:

"That the legislative power of the city of Seattle shall
be vested in a mayor and a city council, which shall con-
sist of two houses, namely, the board of aldermen and a
house of delegates."

Sec. 13 of said art. 4 provides, among other things:

"Every legislative act of said city shall be by ordinance.
. . .   Any ordinance may originate in either house, and
when it shall have passed one house it may be passed,
amended or rejected in the other."

In August, 1891, the said city council appointed a com-
mission composed of citizens and business men of said city
to frame and submit to it propositions for amending the
city charter in such particulars as they might suggest, and
in accordance with such request said propositions were
framed and submitted to the council.   On October 30,
1891, the said proposed amendments, numbered one to
nineteen, were first proposed in the house of delegates, and
proceedings were thereupon had, resulting in the passage

of the same by said house of delegates. Thereafter the board of aldermen duly passed the same.

Proposed amendment No. 2 is the principal subject-matter of this suit, and the same as proposed to the city council, and as passed and published is as follows:

"PROPOSED AMENDMENT No. 2.—A proposition to amend sections three (3), five (5) and seven (7) of article 4 of the freeholders' charter, adopted October 1, 1890:

"*Reso. ved*, That § 3 of art. 4 of the freeholders' charter be amended so as to read as follows: Sec. 3. At the general election in 1892 there shall be elected in each ward in the city one member of the board of aldermen and one member of the house of delegates. At the general election of 1892 the five members of the board of aldermen receiving the greatest number of votes shall hold office for four years, and the other four for two years, and in the case of a tie vote the length of the terms shall at the first session, and before transacting any other business, be determined by lot. At each subsequent general municipal election enough aldermen shall be elected from the respective wards to succeed those whose terms are about to expire, and the aldermen so elected shall hold office for four years.

"The members elected to the house of delegates shall each hold office two years. Each member of either house shall further hold office until his successor is elected and qualified.

"Each member of the city council shall have an annual salary of three hundred dollars, to be paid monthly: *Provided*, That after the population of the city shall have reached the number of seventy-five thousand, as determined by any official census, such salary shall be the sum of six hundred dollars per annum, payable annually. A deduction of five dollars shall be made from each member's salary who shall be absent from any meeting of his respective house, unless said member shall certify on his honor that said absence was caused by illness or unavoidable absence from the city at the time of the meeting.

"*Resolved*, That § 5 of art. 4 of the freeholders' charter be amended so as to read as follows:

"SEC. 5. No member of either house shall hold any

other municipal office, or be an employé of the city or of either of said houses, or be interested in any contract with the city, or with or for any department institution, board, officer, agent or employé thereof.

"Each member upon taking office shall make and file in the office of the city clerk an oath that he will faithfully comply with and abide by all the requirements of this section, and the violation of any of the provisions of this section shall work a forfeiture of his membership and warrant his expulsion from the house to which he belongs.

"*Resolved,* That § 7 of art. 4 of the freeholders' charter be amended so as to read as follows:

"Sec. 7.  The house shall meet in separate chamber.  A majority of either house shall constitute a quorum, but a less number may adjourn from day to day, or till the time of the next regular meeting, and may compel the attendance of absent members in such manner and under such penalties as each house shall prescribe for itself.

"A quorum of each of the two houses of the city council, assembled in joint convention, shall be a quorum of a joint convention of the city council."

There were nineteen of these proposed amendments, of which Nos. 4 and 17 failed to pass the second consideration of the council, and were not submitted in any form. A part of the others, without any amendment or alteration thereof being made, passed each house upon such reconsideration, while several of them, including No. 2, upon such reconsideration, were amended by the council, and as amended they passed each house, and all requirements of § 1, art. 20, were complied with in passing the same as amended.

The fact that amendment No. 2 was amended upon such reconsideration without again having been published, as is required upon the original introduction or proposal of the same in the city council, constitutes the first objection to the validity thereof raised by the relator.  Proposed amendment No. 2 as passed as amended upon such reconsideration is as follows:

"PROPOSED AMENDMENT No. 2.—A proposition to amend §§ 2, 3, 5 and 7 of art. 4 of the freeholders' charter, adopted October 1, A. D. 1890.

"*Reso'ved*, That § 2 of art. 4 'be amended so as to read as follows:

" SEC. 2.   The board of aldermen and the house of delegates shall each consist of as many members as there are wards in the city, one member of each house to be elected from each ward.

"*Resolved*, That § 3 of art. 4 of the freeholders' charter be amended so as to read as follows:

"SEC. 3.   At the general election in 1892 there shall be elected nine members of the board of aldermen, and there shall be elected in each ward one member of the house of delegates: *Provided*, That in case of the adoption of this proposed amendment the person receiving the highest number of votes for delegate at said general election in March, 1892, shall be entitled to qualify as said delegate.   At the general election in 1892, the five members of the board of aldermen receiving the greatest number of votes shall hold office for four years, and the other four for two years, and in case of a tie vote the length of the term shall, at the first session and before transacting any other business, be determined by lot.   At each subsequent general municipal election one delegate shall be elected from each ward, and enough aldermen shall be elected from the respective wards to succeed those whose terms are about to expire, and the aldermen so elected shall each hold office for four years.

"The members elected to the house of delegates shall each hold office two years.   Each member of either house shall further hold office until his successor is elected and qualified.   Each member of the city council shall have an annual salary of three hundred dollars, to be paid monthly; *Provided*, That after the population of the city shall have reached the number of seventy-five thousand, as determined by any official census, such salary shall be the sum of six hundred dollars per annum, payable monthly.   A deduction of five dollars shall be made from each member's salary who shall be absent from any meeting of his respective house, unless said member shall certify on his honor that said absence was caused by illness or unavoidable absence from the city at the time of the meeting.

"*Resolved,* That § 5 of art. 4 of the freeholders' charter be amended so as to read as follows:

"SEC. 5.   No member of either house shall hold any federal, state or other municipal office, or be an employé of the city, or either of said houses, or be interested in any contract with the city or with or for any department, institution, board, officer, agent or employé thereof.    Each member on taking office shall make and file in the office of the city clerk an oath that he will faithfully comply with and abide by all the requirements of this section, and the violation of any of the provisions of this section shall work a forfeiture of his membership and warrant his expulsion from the house to which he belongs.

"*Resolved,* That § 7 of art. 4 of the freeholders' charter be amended so as to read as follows:

"SEC. 7.   The house shall meet in separate chamber.   A majority of either house shall constitute a quorum, but a less number may adjourn from day to day or till the time of the next regular meeting, and may compel the attendance of absent members in such manner and under such penalties as each house shall prescribe for itself.

"A quorum of each of the two houses of the city council, assembled in joint convention, shall be a quorum of a joint convention of the city council."

The relator was a candidate in the third ward for the office of delegate to the house of delegates at the annual election held March 8, 1892, and under § 3 art. 4 of the existing charter he would have been entitled to be declared elected, as he received the second highest number of votes cast for that office in his ward.   But he has been refused the declaration of his election, because it has been ascertained and declared that the proposed amendments to §§ 2 and 3 of art. 4 were carried at the same election, whereby the number of delegates being reduced to one only from each ward, only the candidate receiving the highest number of votes was to be declared elected.   Of this action he complains, and sought by *mandamus* in the superior court to compel the declaration of his election at the hands of

the canvassing officers, for the reason, as he alleged, that the said amendments were not lawfully adopted. The *mandamus* was refused and he appeals.

The first objection taken by relator is, that after the first passage of the proposed amendments, as " Proposed Amendment No. 2," by the council, and its publication for ten days, upon its reconsideration it was amended and then submitted to the popular vote, without a second ten days' publication and reconsideration and adoption without amendment. In short, the contention is that to comply with § 1, art. 20, the same identical proposition must pass both houses, once before and once after ten days' publication, without change or amendment, in order to give it a valid existence as a subject for the vote of the electors. We take it, however, that the first vote in council is intended by the charter to be one rather of acquiescence than of anything final in its character, and that the ten days' publication is merely one of warning to the public that the subject-matter is to be considered with a view to its amendment. Reading closely, we should say that amendments were barred upon the first consideration, rather than at the second, since it is only in connection with the second that it is provided that the proposition shall "pursue the same course before the council and mayor as is pursued by an ordinance," and it is only after the second passage that the mayor is called upon to consider it. It would certainly be a great taking of chances for a proposition to go through three such ordeals, with the possibility of meeting the mayor's disapproval at the end and die beyond resuscitation, when some slight change might overcome the mayor's objection. We conclude rather that the proposition is, after its first publication, to all intents and purposes, an ordinance, as the charter says it shall be, and comes up for passage, amendment or other parliamentary treatment, as the case may be.

The next point made against these amendments is that

whereas, the final thirty days' publication of the proposed amendments was made in the form of seventeen consolidated propositions, as they passed the council, the notice of election and the ballots purported to split up the propositions so as to require thirty-seven expressions by the voter to reach them all. The notice was to the effect that, whereas, proper action had been taken by the legislative authority of the city, providing therefor, certain propositions to amend the charter were then in course of publication in the city official newspapers; and whereas, by ordinance No. 1974, each of the amendments intended to be submitted was briefly described and numbered for the purpose of reference thereto in the ballots to be cast for and against the ratification of the same, "as follows, to wit:" etc., etc. Then the notice followed the exact language of the ordinance, and among the thirty-seven proposed amendments we find, in its proper order, this one:

"7. Proposed amendment to § 2 of art. 4 of said charter, fixing the number of members of the board of aldermen and house of delegates of said city, respectively, being the first proposed amendment in course of publication as aforesaid under the heading 'Proposed Amendment No. 2.'"

The others followed in regular sequence. Upon the ballot, under the head of "Charter Amendments," we find "For amendment No 7 to the city charter," and "Against amendment No. 7 to the city charter," and the others are provided for in like manner.

Recurring to ordinance 1,974, we find it prescribing in this manner:

"Sec. 6. Said several proposed amendments specified and numbered in § 2 of this ordinance shall be voted upon by the qualified voters of said city, at said general election mentioned in said § 2 for the purpose of ratification or rejection by a majority of all lawful voters voting thereon at said election, of each of said amendments in the manner following, to wit: 'Every voter electing to vote in favor

of the ratification of said proposed amendment in said § 2, numbered 7, shall vote a ballot containing the words—For amendment No. 7 to the city charter ; ' " and the contrary; and so on clear through the whole number of amendments.

The relator claims that the effect of breaking up the original seventeen propositions into thirty-seven had the effect to confuse the voter and deprive him of a fair chance to express his wishes; but here again we cannot agree with him.  We do not doubt that there was confusion and inability to decide which way to vote upon the amendments, but it grew out of the necessities of the case, through there being so many subjects to be voted upon rather than through the method of presenting them.  Indeed it is difficult to see how so many different propositions could have been submitted in any other way than the one adopted, which has the additional merit of having closely followed the general election statutes (and especially Gen. Stat., § 518); and the last clause of § 1, art. 20 of the charter.  The amendments to §§ 2 and 3, art. 4, were indispensable to each other, and might properly have been submitted together as one proposition, but each having received a majority of the vote, their separate submission in strict accordance with the law is no ground for defeating either or both.

Lastly, there were 8,294 ballots cast at the election in question.  Of these 1,461 were cast in favor and 1,107 against amendment No. 7, and 1,807 were cast in favor and 693 against amendment No. 8.  Thus 5,726 persons failed to vote upon No. 7, and 5,794 failed to vote upon No. 8. Nos. 7 and 8 were the amendments to §§ 2 and 3 of art. 4, the adoption of which, as declared, deprived the relator of his office.  He claims that inasmuch as the language of the charter, § 1, art. 20, is: "If at said election a majority of all the lawful voters voting *thereat* shall by their votes ratify any amendment so submitted, the same shall thereby

become a part of the city charter," these amendments were not adopted, since not less than 4,148 was "a majority of the lawful voters voting *thereat.*" Sec. 11, art. 10 of the constitution quoted above, says that such a charter may be amended by proposals therefor submitted by the legislative authority of a city, "at a general election, and ratified by a majority of the qualified electors voting thereon." The position of the relator is, that this constitutional provision is a limitation upon the powers of the municipality in amending its charter; that the framers of the constitution intended to surround freeholders' charters of cities of the first class with safeguards; and that as one of these safeguards this provision was placed in the constitution as a limitation upon the power of the city in relation to the amendment of its charter. He maintains that it was not intended to prohibit the people constituting the municipality from requiring and placing upon themselves further limitations and restrictions in the matter of amendments. Therefore, while the constitution adopts a liberal method of procuring amendments, it is entirely within the power of the city itself, by its original charter, to adopt a strict method such as is supposed to be involved in the word "thereat." Just how far this proposition could be carried without crossing over the line where amendments would become practically impossible at once occurs for reflection. We have already seen how, before a proposition is submitted it must pass by three-fifths vote of the council, be published, pass again by three-fifths, face the mayor's objections, be published again and then be voted upon at an election, where two-thirds of the voters treat it with indifference; and looking upon this as a precedent, it will be safe to say that the freeholders' charter of Seattle bids fair to take rank among the famed oriental laws that never could be changed. But we differ with the relator in this matter. The framers of the constitution went out of the usual way of making such in-

10—4 WASH.

;struments to insert a provision therein looking to the possible solution of a perplexing modern problem—the government of large cities. It granted to certain cities the right to govern themselves, subject only to general laws of the state. The grant was made in the shape of power to enact a charter law and to amend it afterward. Just how far this grant was independent of legislation we are not called upon to say; but it may be safely said that wherever in this grant it is declared that a thing may be done in a certain way, when it comes to be done the doing it in that way will be sufficient.

"Wherever the language contains a grant of power it was intended as a mandate. Wherever the language gives a direction as to the manner of exercising a power, it was intended that the power should be exercised in the manner directed, and in no other manner." *Varney v. Justice*, 86 Ky. 596 (6 S. W. Rep. 457).

"When the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases." Cooley, Const. Lim. (5th ed.), p. 78.

The power to amend is in this instance as important as the power to enact. The system is new and untried. The labor of the freeholders is likely to be accepted somewhat on trust. Trial alone can develop to the general view the imperfections of their work. The constitution sought to provide for this. No previous city council can propose a charter. Fifteen freeholders must be elected for that sole purpose. But when the charter has been adopted, put into service and tried, it is left to those whose experience is most intimate with it, to point out in propositions, to the people, wherein they think it needs change. The constitution requires and contemplates but little of pomps or forms—a recommendation by the legislative authority, a publication so that all may have knowledge of the proposition, and a

vote is all. General elections were selected as the time for submission, because there ought to be a certain stability about such instruments, and the vice of non-attention to special elections is well known. We presume it would not be contended that if, following Gen. Stat., §§ 518–519, a charter election were held on the same day as a general election, the language of § 519 should be construed as controlling the constitution, and requiring a majority of all votes cast on that day to adopt the proposed charter, because the constitution plainly declares that if a majority of the qualified electors voting *thereon* ratify the proposed charter it shall become the charter of the city. To our minds the language concerning amendments is no less vigorous and controlling, and must receive like construction. It is the right of the people to have their charter amended by the majority vote of those who vote thereon, and having so amended it, the relator is without cause of action.

Judgment affirmed.

ANDERS, C. J., and HOYT and SCOTT, JJ., concur.

DUNBAR, J., dissents.