[No. 2005.   Decided November 5, 1895.]

WILLIAM H. REEVES, *Respondent*, v. ALEXANDER AND-
ERSON et al., *Appellants*.

CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER — CON-
STRUCTION OF STATUTES — AMENDMENT OF CHARTERS OF CITIES OF
FIRST CLASS.

Before the judiciary will declare an act of the legislature invalid
on the ground that it is in conflict with the constitution, such con-
flict must be shown to be clear and unquestionable, and every in-
tendment must be given force in favor of the constitutionality of the
law.

Under the provisions of our state constitution the power is dele-
gated to cities of the first class to frame charters for their own govern-
ment, subject to the general laws of the state.

The right of a city of the first class to make a new charter is in-
cluded within the constitutional grant of power to frame a charter,
and the mode pointed out in art. 11, § 10 of the constitution for sub-
mitting proposed amendments to a vote of the people should not be
construed as exclusive of every other method.

The power conferred by the constitution upon the city council in
cities of the first class in the matter of submitting propositions for
amendment or revision of the city charter is purely ministerial, and
the council is not vested with discretionary power in the matter to
such an extent as to make it illegal for the legislature to prescribe
the manner of proposing such amendments.

The power of cities of the first class to frame a charter for them-
selves is a continuing right vested in the voters of the city, and it
does not become exhausted because once exercised.

The constitutional provision authorizing cities of the first class to
frame charters for themselves is not self executing to such an ex-
tent as to render invalid an act of the legislature, whose object is to
further the exercise of the right and make it available.

Appeal from Superior Court, King County.—Hon.
RICHARD OSBORN, Judge. ·Affirmed.

*W. T. Scott*, and *Frank A. Steele*, for appellants.

*Carr & Preston*, for respondent.

2—13 WASH.

The opinion of the court was delivered by

GORDON, J.—Respondent instituted this proceeding in the superior court of King county, for the purpose of compelling the appellants — the mayor, aldermen and members of the house of delegates of Seattle, a city of the first class containing a population exceeding twenty thousand — to authorize the calling of an election within said city for the purpose of choosing fifteen freeholders to prepare a new charter for said city, by "altering, changing, revising, adding to or repealing the existing charter as amended," in accordance with the prayer of a petition of upwards of one-fourth of the qualified electors of said city, which petition had been presented to and rejected by the city council prior to the institution of this proceeding. The demurrer of the appellants having been overruled, and they having elected to stand thereupon, judgment was rendered against them in the court below, from which judgment they have appealed to this court.

Upon the part of appellants it is contended that the act of March 4, 1895 (Laws, p. 42), upon which respondent relies, is unconstitutional, and numerous reasons are assigned in support of this contention. The main objections to the act (and, as we think, the only ones meriting extended notice), may be stated to be: (1) That it is a delegation of legislative power without constitutional sanction. (2) The constitution points out the only method by which the charter may be amended, viz., by proposals submitted by the legislative authority of such city to the voters. (3) That the constitutional provision (art. 11, § 10) is directory and permissive and vests discretion in the city council as to whether it will call an election of the freeholders to frame a charter, and that such discretion cannot be

controlled by legislative enactment. (4) That the power to adopt a charter for its own government (subject to general laws of the state) has been once exercised by the city of Seattle, and hence that the power has been exhausted. (5) That said constitutional provision is self-executing, and that legislative interference is unauthorized.

Section 10, art. 11, of the state constitution, already referred to, provides:

"Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had, at which election there shall be chosen by the qualified electors of said city fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election, and qualified electors, whose duty it shall be to convene within ten days after their election, and prepare and propose a charter for such city. Such proposed charter shall be submitted to the qualified electors of said city, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, and all special laws inconsistent with such charter. . . . Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election, after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon."

Section 1 of the act entitled, "An act to authorize cities of the first class to alter, change, revise, add to or repeal their respective charters," approved March 4, 1895, is as follows:

"Upon the petition of one-fourth of the qualified electors, as shown by the last general city election, of any city of the first class, the city council of said city shall, and without such petition the city council in joint session may, cause an election to be held, at which election there shall be chosen by the qualified electors of said (city) fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election, and qualified electors, whose duty it shall be to commence within ten days after their election, and within sixty days thereafter prepare a new charter for said city by altering, changing, revising, adding to or repealing their existing charter, together with any amendments thereto, and file the same with the city clerk."

Before proceeding to a consideration of the objections urged against the constitutionality of this enactment in the order already noted, we may here remark that it is a very general rule that before the judiciary will declare an act of the legislature invalid on the ground that it is in conflict with the constitution, such conflict must be shown to be clear and unquestionable, and every intendment must be given force in favor of the constitutionality of the law. This rule was recognized by this court in *Nelson v. Troy*, 11 Wash. 435 (39 Pac. 974), and is so well understood and universally recognized as to require no citation of authorities.

In support of the contention that the act in question is a delegation of a legislative power, we are cited to art. 2, § 1 of the constitution, which is:

"The legislative powers shall be vested in a senate and house of representatives, which shall be called the legislature of the State of Washington."

Independent of the constitutional provision now under consideration, an examination of the authorities upon the subject leaves little room for doubting

the authority of the legislature to confer upon cities of a given class the powers to make laws for their local self-government, subject at all times, however, to the general laws of the state. *State, ex rel. Atty. Genl. v. O'Neill*, 24 Wis. 149; *State v. Noyes*, 10 Fost. (N. H.) 279; 3 Am. & Eng. Enc. Law, p. 698, and the numerous authorities there cited.

In the fifth edition of Cooley's Constitutional Limitations, p. 140, the learned author says;

"The maxim, that legislative power must not be delegated, . . . is to be understood in the light of the immemorial practice of this country and of England, which has always recognized the propriety and policy of vesting in the municipal organizations certain powers of local regulation, in respect to which the parties immediately interested may fairly be supposed more competent to judge of their needs than any central authority."

This principal also received the distinct recognition of this court in *Nelson v. Troy, supra.*

But all doubt as to the power of cities of this state having a population of twenty thousand, to frame charters for their own government, is, in the judgment of the majority of this court, removed by the express language of the constitutional provision first above quoted.

*Second.* We think that the right to make a new charter is included within the constitutional grant of power to "frame a charter;" that the right is a continuing right, and that by the act in question the legislature has made it possible for the people to exercise such constitutional right to create a new charter. This being so, it should not be held invalid even if we should conclude that its provisions concerning *amendments* are not in accord with the constitution; it would still be valid in so far as it pointed

out the manner in which a new charter could be created. However, we think that the mode pointed out by the latter part of § 10, art. 11, for submitting proposed amendments to a vote of the people, is not to be construed so as to exclude every other method. It will be observed that this concerns merely the *manner* of proposing and submitting the amendment, and it rests with the voters in any case to adopt or reject such proposition. We have re-examined the case of *State, ex rel. Wiesenthal v. Denny,* 4.Wash. 135 (29 Pac. 991), and find nothing in it that militates against this view of the constitutional provision.

*Third.* The argument of the learned counsel for appellants in support of the third objection to the constitutionality of the law under consideration is based very largely upon the use of the word " may " in the constitution, as relating to the duty of the city council. The argument amounts to this, that, notwithstanding under the constitution the power to frame a charter for their own government is lodged in the voters of a given city, still it cannot be exercised unless permission to do so is given by the council, which may exercise its own pleasure in granting or withholding the opportunity to vote for the election of freeholders to prepare a charter. We cannot accede to this contention. To admit of such a construction is to unreasonably abridge, if indeed it might not even prevent, the exercise of the power thus conferred and subject it always to the mere caprice or arbitrary determination of the council, something which surely was not intended by the framers of the constitution. We think the powers conferred upon the council by the section are merely ministerial and not legislative, and that the object of the act of March 4 was to confer on voters of cities of the first class an opportunity to exercise the

right conferred upon them by the constitution, by re-
quiring the council to perform what, under the cir-
cumstances of this case, became the plain' duty of
providing for the election and giving the notice thereof
required by law. Neither the constitution nor the
act in question makes it compulsory upon the voters
to adopt a new charter, but this act affords them an
opportunity for so doing without regard to the will of
the council, and in making such provision we think
the legislature did not transcend its constitutional
functions.

*Fourth.* We think that the power to frame a charter
for themselves is a continuing right vested in the
voters of the city, and that it does not become ex-
hausted because once exercised. We agree with coun-
sel for respondent that the object of the constitutional
provision is to confer upon the large cities of the
state the power of local self-government (subject, as
already stated, to general laws) and that this right to
"home rule is not limited at all in point of time."

*Fifth.* Nor do we think the contention that the con-
stitutional provision is self-executing, and that legis-
lative interference is unauthorized can be upheld.
Certainly we should hesitate before declaring a solemn
act of the legislature invalid upon any such ground.
The act, as we have seen, is in harmony with the
spirit of the constitution, and its object is to further
the exercise of a constitutional right and make such
right available. A constitutional provision is said to
be self-executing "when it merely indicates princi-
ples, without laying down rules by means of which
those principles may be given the force of law."
Cooley, Constitutional Limitations, p. 100.

"Perhaps even in such cases [where the power is
self-executing] legislation may be desirable, by way of

providing convenient remedies for the protection of the rights. secured, or of regulating the claim of the right so that its exact limits may be known and understood." Id. 101.

In our opinion it was competent for the legislature to supplement the constitutional provision by pointing out the manner in which the right conferred by the constitution might be exercised, and by prescribing rules for the guidance of the the city council in relation thereto.

The conclusion reached by the learned court below was right, and the judgment appealed from will be affirmed.

DUNBAR, J., concurs.


HOYT, C. J. (*concurring*). The law of this state, as settled by several decisions of this court, seems to be that the legislature can amend freeholders' charters. If the legislature can do this by direct enactment, I see no reason why it cannot authorize the same to be done by the inhabitants of the city. To hold the law which authorizes them so to do unconstitutional would, in my opinion, require the further holding that the legislature itself could not amend such charters, and, its power to do this having been sustained by the decisions of this court, I feel bound to acquiesce therein and sustain such power, and having done this I feel compelled to go further and sustain the validity of the law under consideration. I therefore concur in the affirmance of the judgment.