[No. 8984.   *En Banc.*   August 29, 1910.]

THE STATE OF WASHINGTON, *on the Relation of E. V. Lambert et al., Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—FORMATION OF CHARTER—ELECTIONS— TIME FOR HOLDING—DISCRETION—STATUTES. An election to choose fifteen freeholders to prepare a new city charter for cities of the first class, under Rem. & Bal. Code, § 7498, must be called by the city council within a reasonable time after due petition therefor is filed, in view of the failure of the statute to fix the time, and of § 7499, requiring the proposed charter to be submitted at an election to be called "immediately"; hence, the provision of § 7502 that the election may be general or special only vests in the council a discretion to fix upon the next general election in case the same is to occur within a reasonable time.

SAME—ABUSE OF DISCRETION—MANDAMUS. Where a city council is petitioned on May 24th to call an election to choose fifteen freeholders to prepare a new city charter, under Rem. & Bal. Code, § 7498, it is an abuse of discretion for the city council to fix the date therefor upon the next general election to be held on the first Tuesday of May, 1911; and mandamus lies to compel the council to fix upon a reasonable time.

SAME—TIME FOR HOLDING—ELECTION—COURTS—POLITICAL QUESTION. The question of the necessity of holding an election to choose freeholders to frame a city charter at an earlier time than one year in the future, is usually a political question not susceptible of proof in a court.

Certiorari to review a judgment of the superior court for Spokane county, Sullivan, J., entered July 23, 1910, grant-

[1] Reported in 110 Pac. 622.

ing a peremptory writ of mandamus commanding a city council to call a special election, after a hearing on the merits. Affirmed.

*Fred B. Morrill* and *V. T. Tustin,* for relators.

*Munter & Lovejoy, A. E. Gallagher, H. L. Kimball, Adolph Munter, John E. Blair, H. M. Stephens,* and *John M. Gleason,* for respondents.

RUDKIN, C. J.—Section 7498, Rem. & Bal. Code, provides that:

"Upon the petition of one-fourth of the qualified electors, as shown by the last general city election, of any city of the first class, the city council of such city shall, and without such petition the city council in joint session may, cause an election to be held at which election shall be chosen by the qualified electors of said (city) fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election, and qualified electors, whose duty it shall be to commence within ten days after their election, and within sixty days thereafter prepare a new charter for said city by altering, revising, adding to or repealing. their existing charter, together with any amendments thereto, and file the same with the city clerk."

The next section provides that the new charter shall be submitted to the qualified electors of the city at an election to be *immediately* called therefor.  Section 7502, Id., provides that, "Said elections may be general or special elections and, except as herein provided, shall be governed by the law regulating and controlling general or special elections in said city."

On the 24th day of May, 1910, a petition to the city council of the city of Spokane was filed with its clerk, wherein more than one-fourth of the qualified electors of the city, as shown by the last city election, petitioned the city council to cause a special election to be held at a date not more than thirty days after the filing of the petition, for the purpose of choosing fifteen freeholders to prepare a new charter for the city in the manner provided by law.  It appears from the

return to the alternative writ of mandamus, issued by the court below, that the city council challenged the sufficiency of the signatures to this petition; but it nevertheless, of its own motion, adopted a resolution providing for the election of the fifteen freeholders, at the next general city election to be held on the first Tuesday of May, 1911. Certain of the petitioners thereupon applied to the court below for a writ of mandamus to compel the city council to call the election petitioned for within one month from the date of the writ.

The alternative writ was issued, commanding the city council to immediately order an election to be held within two months from the date of the writ, or show cause why it should not do so. A final hearing was had on the return to the alternative writ, and a peremptory writ was issued commanding the city council to forthwith order a special election, as prayed for in the petition, to be held not later than October 1, 1910. The court below denied an application for a supersedeas pending an appeal from its decision, and in view of the fact that the date fixed for the election will have passed before an appeal can be heard in this court, the record has been brought before us by a writ of review, and the cause is now here for final decision. While the sufficiency of the signatures to the petition for the calling of the election was denied in the return to the alternative writ, the legal sufficiency of that petition, in both form and substance, was admitted at the hearing in the court below, and in argument before this court.

On the foregoing facts, the following propositions will, we think, be conceded: First, that the duty of the city council to call the election follows as a matter of course from the presentation of a sufficient petition. *Reeves v. Anderson,* 13 Wash. 17, 42 Pac. 625; *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609. Second, that if the date for the election is not fixed by statute, it must be called and held within a reasonable time. Third, that if the statute fails to designate or fix the time for holding the election, some discretion is necessarily

vested in the city council in that regard. Fourth, that if there is a clear and manifest abuse of that discretion, the courts will control the action of the city council by mandamus.

The section of the statute which provides for the election of the fifteen freeholders simply provides that the city council shall cause an election to be held, without more, and if this section stood alone, the rule requiring the city council to call the election within a reasonable time would prevail. Section 7502 provides that such elections may be general or special elections, and if these two sections stood alone we would feel constrained to hold that the latter section vested in the city council an absolute discretion to submit the question at the next ensuing general election to be thereafter held. But the difficulty with this construction is that § 7502 applies to the election for the adoption of the new charter, to be held pursuant to § 7499, as well as the election to choose the fifteen freeholders, and the latter section expressly provides that the election for the adoption of the charter shall be called *immediately*, so that we are convinced that the legislature did not intend to vest an absolute discretion in the city council in this matter. We are rather of opinion that ·§ 7502 is permissive in its character. It might well be inferred from the preceding sections of the statute that the elections provided for must all be special, and this section was for the purpose of permitting such elections to be held as a part of the general city election, rather than for the purpose of fixing a date for the election.

Any other or different construction might lead to the following results: The election for the choice of freeholders is put off almost a year, or until the next general election, and for the like reason, or for no reason at all, the election to adopt or ratify the charter might be put off until the next general city election or for two years longer. We are convinced that the legislature did not intend any such consequence as this. In other words, we are of the opinion—as

was the court below—that the elections provided for must be held within a reasonable time, and may be general, if a general city election is to be held within a reasonable time thereafter; but otherwise, they must be special. We are further of opinion that the election was not called within a reasonable time, and that the city council abused the discretion vested in it by law. Only two cases were cited in argument bearing upon the general question under consideration. A statute of Illinois provides that:

"Any town in this state, incorporated either under any general law for the incorporation of towns, and acts amendatory thereof, or under any special act for the incorporation of any town' or village, may become organized as a village, under this act, in the manner following: Whenever any thirty voters in such town shall petition the president and trustees thereof to submit the question, whether such town will become organized as a village, under this act, to the decision of the legal voters thereof, it shall be the duty of such president and trustees to submit the same accordingly, and to fix a time and place within such town for holding such election, and to appoint the judges to hold such election, and to give notice of the time, place and purpose of such election by causing at least five notices thereof to be posted in public places in such town, for at least fifteen days prior to holding such election."

A petition under this act was presented to the president and trustees on the 16th day of July, 1874, and an election was called for the first Tuesday in April, 1875. In *Village of Glencoe v. People*, 78 Ill. 383, the court held that this was a manifest abuse of discretion on the part of the municipal officers, and affirmed a judgment awarding a peremptory writ of mandamus compelling them to call the election for an earlier date. In the course of its opinion the court said:

"The change desired to be effected in the municipal government of the village, through an election, was such as materially affected every citizen and taxpayer of the village. The petition was based on what were supposed sufficient reasons, having reference to the *then existing* state of affairs. If reform, to be brought about through this means, was needed,

and desired by a majority of the voters of the village, it was a wrong and an outrage that they should be compelled to submit to the evils they labored under, for another year, when the change might reasonably be effected within a month. If there were leeches on the treasury, a vicious revenue system, imperfect police regulations, in the opinion of a majority of the voters, to be gotten rid of only through change in the organic law, they were entitled to have the change made as soon as it was practicable, and every day they were forced to submit to the continuance of the evils beyond that period, was so much arbitrary oppression by the council.

"We can imagine no public necessity justifying the postponement of the election from the 16th day of July, 1874, to the first Tuesday of April, 1875. It has every appearance of an attempt, on the part of those filling the council, to perpetuate their own power to the utmost possible period, notwithstanding and in defiance of the wishes of the people. It is not admissible that this conduct shall be excused by the respondent assuming that a majority of the electors did not concur with the thirty petitioners, and therefore the election would have involved the village in useless expense. That was the question to be settled by the election, and it could in no other way be settled. The law gave the thirty electors the right to have the election, and to have it within a reasonable time, and its unnecessary postponement was in violation of that right."

The only difference between the statute there construed and our own lies in the fact that our statute provides that the elections may be general or special, but for reasons already stated we do not think that this latter provision is controlling. In *Lubliner v. Alpers*, 145 Cal. 291, 78 Pac. 722, the supreme court of California held that the board of supervisors of the city and county of San Francisco were vested with full discretion to order a special election, or to wait until the next general election, to submit certain questions under a provision of the constitution of that state, but the case is not in point here, for we are convinced from a consideration of the act in question that our legislature intended otherwise.

The relators complain that no proof was offered tending to show a necessity for calling the election at an earlier date, and that the court rejected proof offered by them tending to show the reasons which prompted them in deferring the matter until the next general city election. The nature of the proof thus referred to is disclosed in affidavits filed before us in support of and in opposition to an early hearing in this court. The questions thus presented are purely political. The one-fourth or more of the electors who signed the petition calling for an election were doubtless of the opinion that an early election should be held, while perhaps an equal or even greater number may entertain a different view. But the question of the necessity for changing a municipal charter is usually a political one, upon which opinions will differ, and, as a rule, is not susceptible of proof in a court of justice. Such was the case here.

Finding no error in the record, the judgment is affirmed; and in view of the necessity for giving immediate notice of the election, the remittitur will issue forthwith.

PARKER, CHADWICK, FULLERTON, CROW, and DUNBAR, JJ., concur.