[No. 10694.   Department One.   October 3, 1912.]

THE STATE OF WASHINGTON, *on the Relation of W. J. Hindley et al., Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *J. Stanley Webster, Judge, et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—ORDINANCES—AMENDMENT — INITIATIVE POWER—PETITION—CONSIDERATION—PRESUMPTIONS.   Under a city charter providing that the city clerk shall file and present to the city council an initiative petition by 15 per cent of the electors, and that the city council shall, within ten days, either pass the ordinance without alteration or submit it to popular vote, the petition will be held *prima facie* sufficient, where the council delayed all action and there is no affirmative showing that it considered or rejected the petition on the ground of insufficiency.

MUNICIPAL CORPORATIONS—CHARTERS—AMENDMENTS—ELECTIONS— GENERAL OR SPECIAL.   Const., art. 11, § 10, providing that a city charter "may" be amended by proposals therefor submitted to the electors at "any general election," does not exclude other methods; hence, under the constitutional authority to cities of the first class to adopt special charters not "inconsistent" with the constitution and laws, a city may provide for proposed amendments to its special charter to be submitted to the electors at a special election.

SAME—CHARTERS—SCOPE OF AMENDMENTS.   Amendments to a special charter of a city of the first class that may be submitted at a special election are not confined to those that are only revisory or supplemental, but include those which alter or annul the basic principle upon which the city government is founded.

SAME—SCOPE—STATUTES—AS "NOW" PROVIDED.   A provision in a city charter authorizing the city to submit the matter of proposed amendments to the electors in the manner "as is now provided," refers to the charter at the time the amendment is proposed, and not to the time when the law was passed.

SAME—SUBMISSION TO VOTERS—WARDS—PROCEEDINGS.   A proposed amendment to a city charter is not insufficient in that it requires the election of alderman by wards when there are at present no wards in the city; that being a mere detail for which the city council can provide.

[1]Reported in 126 Pac. 920.

SAME—AMENDMENTS TO CHARTER—INITIATIVE PETITION—SIGNA-
TURES—WITHDRAWAL.   The right to withdraw a signature from an
initiative petition is a personal one to the signer, and cannot be ex-
ercised by one who circulated the petition.

Certiorari to review a judgment of the superior court for
Spokane county, Webster, J., entered August 22, 1912,
granting a writ of mandamus, after a hearing before the
court.   Affirmed.

*H. M. Stephens, W. E. Richardson,* and *Ernest E.
Sargeant,* for relators.

*Morrill, Chester & Skuse,* for respondents.

PER CURIAM.—The superior court of Spokane county,
Washington, J. Stanley Webster, Judge, having issued a
writ of mandate directing the commissioners of the city of
Spokane to call an election giving the people of that city
an opportunity to vote upon proposed charter amendments,
an appeal having been taken, and a supersedeas denied
(*Cooper v. Hindley, ante* p. 259, 126 Pac. 916, decided
September 28, to which reference should be made), the de-
fendants, the present relators, sued out a writ of certiorari
to this court.   Return having been made and the merits of
the case being properly before us, we will consider the ob-
jections of the present relators, the commissioners, in the
order in which they have been presented.

It is urged as a reason why the relators should not be
compelled to call an election in accordance with the petition,
that the record does not show, and that the fact is, that the
commissioners have not passed upon the sufficiency of the
petition.   This objection is without merit.   Section 82 of
the charter of Spokane provides that the initiative power of
the people shall be exercised as follows:

"(a)   Petition:   A petition signed by qualified electors
of the city, accompanied by the proposed legislation or
measure in the form of a proposed ordinance, and requesting

that such ordinance be submitted to a vote of the people, if not passed by the council shall be filed with the clerk.

"(b)    Clerk's Certificate: Within two days from the filing of such petition the clerk shall certify the number of votes cast at the last general municipal election, and the number of signers of such petition, and shall present such certificate, petition and proposed ordinance to the council.

"(c)    Action by Council Upon Petition: Fifteen Per Centum Petition: If such petition be signed by qualified electors in number equal to 15 per centum of the total number of votes cast at the last preceding general municipal election, the council, within 10 days after the receipt thereof, except as otherwise provided in this charter, shall either pass such ordinance without alteration, or submit it to popular vote at a special election which must be held within 30 days after the date of the ordering thereof. Provided, however, that if any other municipal election is to be held within 60 days after the filing of the petition, said proposed ordinance shall be submitted without alteration to be voted upon at such election."

It is clearly indicated by these provisions that a duty rests upon the commissioners and the city clerk. If the clerk certifies the petition to the council as sufficient in that it is signed by the requisite number of qualified electors, and no affirmative showing of consideration or rejection on that ground is made, we hold the petition to be *prima facie* sufficient. If it were not so, the commissioners could, by mere neglect, defeat a right which the people of the city have by express provision reserved to themselves. Speaking to the general law, the act of 1903, chap. 186, p. 393, which is in all essentials similar to the charter provision now under consideration, the court said, in *Hindman v. Boyd*, 42 Wash. 17, 84 Pac. 609:

"Some one must determine that fact, and under the statute it must lie with the council to pass upon it in the first instance. It is generally held, under similar statutes, that it is the duty of the body to whom petitions for the submission of questions to the voters are presented to carefully scrutinize, examine, and determine as to the number and

qualification of the signers before putting the people to the expense of an election."

The records show that the electors' petition in this case was filed on May 22, 1912, and relators' answer in the mandamus proceeding on August 7, 1912, during which time nothing was done by the council in the way of determining the qualifications of the petitioners. But we understand from the argument of counsel that the real reason for rejecting the petition was that relators were advised that an election could not be held prior to the time fixed for the next general election, which would be in December, 1913. Where it is thus manifest that the sufficiency of the petition was not a question considered by the commissioners at the time it was certified to them, but that its consideration was postponed upon other grounds, it would seem that that question should be foreclosed in a proceeding of this character.

Coming now to the main issue, that is, whether an election can be presently called, relators rely primarily upon that part of art. 11, § 10, of the state constitution, which reads as follows:

"Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election, after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon."

This article has been considered by the court in a number of cases, in all of which it has been held that a city is bound by the general laws of the state, but that the purpose and intent of the constitution was to give to cities of the first class, having the right to adopt their own charters, the fullest power in that respect, provided only that their acts shall be consistent with and subject to the constitution and general laws. The word "consistent" may have been inadvertently used by the framers of the constitution. Literally it would imply that there had been either legislative or

constitutional expression upon the particular subject under review. But it has been given its evident meaning and so applied by this court in many cases; that is, that a city with its own charter may legislate upon every subject not inconsistent with or hostile to the statutes or constitution or, as said in *Bussell v. Gill*, 58 Wash. 468, 108 Pac. 1080, 137 Am. St. 1070:

"The object of this constitutional provision was to secure to all such cities complete local self-government in municipal affairs, subject only to the restrictions mentioned, and charter provisions adopted under the authority so conferred should not be held invalid, unless it appears that they are in direct conflict with the constitution or laws of the state."

See, also, *Walker v. Spokane*, 62 Wash. 312, 113 Pac. 775; *Hindman v. Boyd, supra.*

With this provision and its judicial construction before it, the freeholders committee, which prepared the present charter for the city of Spokane, provided:

"Section 125. Amendment of the Charter:

"This charter may be amended by a majority vote on such amendments. The provisions of this charter, with respect to submission of legislation to popular vote by the initiative, or by the council of its own motion, shall apply to and include the proposal, submission and adoption of amendments. The council may make further regulations for carrying out the provisions of this article, not inconsistent herewith."

See, also, par. (c), § 82, above quoted.

In the light of the legislation of the past twenty years, both state and municipal, and the purpose of the constitution to give the fullest measure of self-government to cities of the first class, and especially when considered in the light of that which has gone before in the same article; that is, "*all* elections in this section [Sec. 10] shall only be had upon notice . . . said elections may be general or special," etc. To give the words "such charter . . . may be

amended at any general election" an imperative mandatory construction would destroy or unreasonably postpone the initiative power of the people, "a power which is superior to that of the corporate authorities." *Hindman v. Boyd, supra.*

Our attention is called to the words of this court in *State ex rel. Wiesenthal v. Denny,* 4 Wash. 135, 29 Pac. 991, 16 L. R. A. 214:

"General elections were selected as the time for submission [of charter amendments], because there ought to be a certain stability about such instruments [charters], and the vice of non-attention to special elections is well known."

This expression was made at a time when amendments could be proposed only by the council, the then "legislative authority." The theory that charter amendments can be proposed only by the commissioners is proposed in relators' briefs, but is now abandoned. However logical the argument in the *Denny* case may be, the electorate of the city of Spokane have seen fit to abandon the theory of representative government, and have provided for the initiation of amendments at any time, and that a vote thereon shall be had within thirty days after their proposal. The construction put upon the constitution in the *Denny* case, that an election upon charter amendments must be held at a general election, is consistent so long as it applies to the former methods of legislation; but the word "may" should not be given that meaning when the people are acting in their sovereign capacity. Although not directly raised, the principle was discussed, and we think decided, in *State ex rel. Lambert v. Superior Court,* 59 Wash. 670, 110 Pac. 622. The governing body there, as here, insisted that an election of freeholders to frame a charter should be had only at a general election, and it had so ordered. This court, speaking through its then Chief Justice, said:

"The election for the choice of freeholders is put off almost a year, or until the next general election, and for the like reason, or for no reason at all, the election to adopt or ratify

the charter might be put off until the next general city election or for two years longer. We are convinced that the legislature did not intend any such consequence as this. In other words, we are of the opinion—as was the court below—that the elections provided for must be held within a reasonable time, and may be general, if a general city election is to be held within a reasonable time thereafter; but otherwise, they must be special. We are further of opinion that the election was not called within a reasonable time, and that the city council abused the discretion vested in it by law."

It was also held that § 7499 of the code provides that an election for the adoption of a new charter shall be called immediately. This we held to mean within a reasonable time. While the court said in *Reeves v. Anderson*, 13 Wash. 17, 42 Pac. 625, that the case of *State ex rel. Wiesenthal v. Denny, supra*, had been reexamined, and that it did not militate against its then holding, if the force of law be given to that part of the *Denny* decision above quoted, the two cases nevertheless seem to be in conflict. Only by rejecting it as dictum or a statement made *arguendo* can the two decisions be harmonized. In the *Reeves* case it was argued upon the authority of the *Denny* case that "with reference to the time, mode and manner of changing a charter, the course to be followed is a mandate, but as to the question as to whether the city will avail itself of the provision of the constitution [art. 11, § 10] to frame a charter, it is permissive."

"However, we think that the mode pointed out by the latter part of § 10, art. 11, for submitting proposed amendments to a vote of the people, is not to be construed so as to exclude every other method. It will be observed that this concerns merely the *manner* of proposing and submitting the amendment, and it rests with the voters in any case to adopt or reject such proposition. . . .

"Third. The argument of the learned counsel for appellants in support of the third objection to the constitutionality of the law under consideration is based very largely upon the use of the word 'may' in the constitution, as relating to the duty of the city council. The argument amounts

to this, that, notwithstanding under the constitution the
power to frame a charter for their own government is lodged
in the voters of a given city, still it cannot be exercised un-
less permission to do so is given by the council, which may
exercise its own pleasure in granting or withholding the op-
portunity to vote for the election of freeholders to prepare
a charter.    We cannot accede to this contention.    To ad-
mit of such a construction is to unreasonably abridge, if
indeed it might not even prevent, the exercise of the power
thus conferred and subject it always to the mere caprice or
arbitrary determination of the council, something which
surely was not intended by the framers of the constitution."
*Reeves v. Anderson, supra.*

Recurring now to our premise that the words "consistent
with" mean "not hostile to," and considering the spirit of
the constitution, that is, to grant the fullest measure of self-
government to cities of the first class, subject to the general
laws, it would result in a contradiction of terms if we were
to hold that, although the manner of proposing amendments
was in strict harmony with the intent of the constitution to
insure home rule to cities, the charter was nevertheless
hostile to the constitution in such degree that its remedial
processes are dependent upon the discretion of the com-
missioners and might thus be indefinitely postponed.

It is also said that amendments referred to and provided
for in the charter are only such revisory or supplemental
changes as the working of the present charter may suggest,
and should not be held to refer to amendments which alter
or annul the basic plan or principle upon which the city
government is founded.    It would be dangerous indeed for
courts to draw a line between amendments, or to classify
them in any way; for the whole question is a political one,
to be determined by the people themselves.    This they may
do and should have the fullest right to do, without sugges-
tion or interference by the courts.    To hold to the contrary
would subject the will of the people to judicial control, and
by construction merely defeat, or unreasonably postpone,

the power reserved in the new charter.   In *Wade v. Tacoma*, 4 Wash. 85, 29 Pac. 983, it is said:

"It may well be presumed that the constitution makers intended to guarantee to the citizens of cities as full and complete a notice of the amendments as of the original charters.   In fact there is no reason why they should not. There is no difference in the effect or operation of charter laws because one happens to be in the original charter adopted and the other an amendment to such original charter.   The amendments may effectually supplant or destroy the original charter and institute a new policy altogether."

In other words, the courts will not concern themselves with methods or results if, after public notice, the popular will may be expressed.

It may not be out of place before closing this part of our discussion to refer to § 7506 of the code.   Our opinion is that this section is in itself sufficient to exempt the city of Spokane from the operation of § 7504, "the general law," where the words "general election" also occur.   The words "as is now provided," in § 7506, must be held to relate to the charter of a city, not as it was at the time the act of 1903 was passed, but at the time the amendment is proposed.

Our decision has not been arrived at without some difficulty, for the truth is that most of the cases we have referred to were decided with reference to a government decidedly different from that of the city of Spokane.   The people of that municipality have rejected the representative system, and adopted what is known as a commission form of government, or, more accurately speaking, a direct government by the people, fortified by certain adjuncts, hostile in a great degree to the former system as evidenced by what is popularly known as the initiative, referendum, and recall. This adoption was sustained in *Walker v. Spokane, supra*, and having there decided that the constitution warrants the selection of these measures, to hold with relators would virtually destroy the spirit of that decision, and in effect

decide that all municipal governments of like character are impotent to assert or execute the rights reserved by the people of the municipality. We would give to them the form of self-government, but deny the substance. The old charter provided for, and the councilmen were elected by, wards. The new charter provides that the governing body shall consist of five commissioners, elected by the whole body of the electors. The proposed amendments provide that ten councilmen shall be elected by wards. It is contended that, inasmuch as the present charter supplanted the old one, no wards exist, and it is therefore impossible to comply with the order of the court. This is a mere matter of detail. We will presume that the commissioners will take such steps as may be necessary to give effect to the will of the people in this regard if it be so expressed at the polls.

Some point is made to the effect that, inasmuch as any petitioner can withdraw his name from a petition prior to the time it is acted upon by the council (*State ex rel. Mohr v. Seattle*, 59 Wash. 68, 109 Pac. 309), therefore, one who has circulated a part of the petition can withdraw that part and the names upon it. We cannot so hold. The right to withdraw, like the right to sign, is a personal privilege, and can be exercised only by the person directly concerned.

Finding no reason in the constitution or the general laws of the state for the denial of the right of the people of the city of Spokane, as voiced by the petition, to vote upon the proposed charter amendments within the time fixed in the charter, the judgment and order of the lower court is affirmed.